Michael Doyle RICHARDSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–314.

Court of Criminal Appeals of Oklahoma.

Sept. 28, 1977.

George W. Thomas, Norman, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Catherine Gatchell Naifeh, Legal Intern., for appellee.

## OPINION

PER CURIAM:

The appellant, Michael Doyle Richardson, hereinafter referred to as defendant, was charged, tried before the court in a non-jury trial and convicted in the District Court, Cleveland County, Case No. CRF–76–161, for the offense of Escape from Lexington Regional Treatment Center in violation of 21 O.S.Supp.1974, § 443. Punishment was assessed at a term of two (2) years under the direction and control of the Department of Corrections of the State of Oklahoma. From a judgment and sentence in accordance therewith the defendant has perfected his timely appeal.

Briefly stated the evidence adduced at trial is as follows: John B. McMakin, records and classification officer at Lexington Treatment Center, identified State's Exhibit No. 1 as the judgment and sentence from Oklahoma County which referred to the defendant. He then visually identified the defendant as the prisoner to whom the judgment and sentence referred and testified that his records showed the defendant's status on March 21, 1976, to be a prisoner at the Lexington Treatment Center. He further related that his records revealed no extensive interviews or consultation with

the prison psychologist by the defendant. He further testified that it was the institution's policy to allow prisoners to visit a critically ill close relative but that the prisoner would have to pay for his trip. If a prisoner was indigent he normally would have to get a guard to voluntarily accompany him. E. J. McWhirter, a correctional officer at Lexington, also identified the defendant as being a prisoner at the institution.

Shift Lieutenant Coy Gifford then identified the defendant as the inmate he reported missing on March 21, 1976, when he discovered that the defendant had signed out of the dormitory to go to the dispensary but had not returned two hours later. After discerning that the defendant had signed out of the dispensary and had still not returned, Gifford notified his supervisor. The prison emergency squad then began escape procedures and the defendant was apprehended on March 22, 1976, by Gary Hann, Assistant Superintendent of the Center. It was then stipulated that Gary Hann, if present, would testify that he apprehended the defendant without difficulty at or near Tinker Diagonal in Del City, Oklahoma. The state then rested.

The first witness for the defense was the defendant's mother, Ella Mae Richardson, who testified that the defendant had been an extremely emotional and hyperactive child, had been placed in special education classes in the fourth grade and had continued in special education until he graduated. She further related that she visited the defendant at Lexington on March 20, 1976, and told him that his father, who was suffering from bone cancer, had taken a turn for the worse and that she felt he would live only for a week or two. The defendant became very upset and related to her that he wished to see his father to apologize for his past behavior. She further related that an organization called HOPE had paid for the defendant to come home to visit his father on one previous occasion. Her husband, to the amazement of doctors, was in an improved condition and was present at the trial.

The defendant, testifying in his own behalf, then stated that he was 26 years of age; that he was an alcoholic and had received treatment at Central State Hospital on one occasion; that he had been drinking and in and out of jail since he was 15 and that he left the Treatment Center because he wanted to see his father. He further testified that he had been told that he could only go to see his father once, "now or at his funeral." After his mother's visit he requested medication at the dispensary to calm himself down but was refused. That day there was also a "shake-down in the dorm" which meant that his room had been searched and that his things had been scattered about. This added additional stress to the situation.

Concerning his mental condition during the escape, the defendant testified as follows:

"I was about—I guess I was about four or five miles from it and I just got to thinking about it, you know, I mean leaving and everything, and I just said—I thought to myself, 'Well, I should have stopped and figured out, I shouldn't have ran but I'm already gone, and they know I'm gone so I am not going to get in any more trouble if I go see my father now, anyway.' So I figured, you know, if they catch me there at least I got the privilege to see my dad before they brought me back; so I went ahead and tried to see my dad."

Defendant further testified that he walked all the way to Del City on the night of his escape and was captured before he got to his parents' home.

The defendant's first assignment of error urges that the decision of the trial court was based upon an application of the *M'Naghten* Rule as the test of insanity and therefore ignored the mental incapacity of the appellant to control his actions. As a result the verdict was not sustained by sufficient evidence. In support of his contention the defendant argues that Oklahoma should reconsider the question of insanity as a defense and adopt the test of Model Penal Code.

As stated in *Suits v. State*, Okl.Cr., 507 P.2d 1261, the *M'Naghten* Rule is the

**1020**

present and exclusive test in this state to determine the question of sanity. This Court does not desire at the present time to abandon that rule. See also *Jones v. State,* Okl.Cr., 554 P.2d 62. Therefore the trial court did not err in applying said rule.

 If the defense is one of insanity at the time of the commission of the act, the defendant in the first instance is presumed to be sane and has the burden to introduce sufficient evidence to raise a reasonable doubt as to his sanity. *Jones v. State,* Okl.Cr., 479 P.2d 591, and *Cox v. Page,* Okl.Cr., 431 P.2d 954. In the instant case it is our opinion after reading the entire record that there was no evidence produced at trial which would rebut presumption of sanity or raise a reasonable doubt of same. The evidence was therefore sufficient and the defendant's assignment of error is meritless.

From an examination of the entire record, it is our opinion that the defendant received a fair and impartial trial, that no substantial right was prejudiced and that the judgment and sentence appealed from should be, and the same is hereby *AFFIRMED.*