**Prince ROGERS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–80–273.**

Court of Criminal Appeals of Oklahoma.

Sept. 18, 1981.

Richard Otto Burst, Sr., Guthrie, for appellant.

Jan Eric Cartwright, Atty. Gen., C. Elaine Alexander, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

The appellant, Prince Rogers was tried for the crimes of Shooting with Intent to Kill (CRF–79–60) and three (3) counts of Robbery with Firearms (CRF–79–61) in Logan County District Court. The jury found the appellant guilty of Assault and Battery with a Dangerous Weapon and three (3) counts of Robbery with Firearms.

The first of the State's five (5) witnesses was Bob Ford. Ford testified that he and a passenger pulled into a rest area on I–35, between Edmond and Guthrie, shortly after midnight on May 6, 1979. Before he could remove his keys from the ignition a short black male was standing by his window. Ford stated that the man, brandishing a pistol, demanding the wallets of Ford and his passenger. Afterwards Ford drove to Edmond and reported the incident to the Edmond Police.

The second witness, Eddie Hilton, testified that at approximately 11:30 p. m. on May 5, 1979, he had stopped at the same rest area. After returning from the rest room he was confronted by a small black man carrying a gun. The man took his wallet and watch. Hilton remained at the rest area long enough to watch his assailant approach another traveler, Richard Weidenbach. He testified that the assailant pulled a gun on Weidenbach and shot him moments later.

The third witness, Richard Weidenbach, testified that after pulling into the rest area a small black male confronted him just as he had gotten out of his car. He stated that the man asked for his money and then shot him as he attempted to produce his wallet. Shortly thereafter a suspect vehicle was stopped with the appellant among the occupants.

■ The appellant's initial assignment of error is that the State's failure to rebut his insanity defense mandated a directed verdict.[1] In *Revard v. State*, 332 P.2d 967 (Okl.Cr.1958), this Court held that the test of criminal responsibility is whether the defendant could distinguish right from wrong as "applied to a particular act." In every case there is an initial presumption of sanity. This presumption remains in effect until, by sufficient evidence, a reasonable doubt as to defendant's sanity has been raised. Once raised, the burden of proving sanity beyond a reasonable doubt devolves to the State. *Richardson v. State*, 569 P.2d 1018, 1020 (Okl.Cr.1977); *Whisenhunt v. State*, 279 P.2d 366, 371 (Okl.Cr.1954).

■ The pivotal issue is whether the appellant's evidence raised a reasonable doubt as to his sanity. Dr. Nelda Ferguson, a clinical psychologist, testified that the appellant lacked the *"moral and ethical"* ability to distinguish right from wrong "in the sense of an *average person.*" (emphasis

---

1. The argument has its statutory basis in 21 O.S. 1971, § 152, which provides that:

   "All persons are capable of committing crimes except those belonging to the following classes:

   \* \* \* \* \* \*

   "Lunatics, insane persons and all persons of unsound mind, including persons temporarily or partially deprived of reason upon proof that at the time of committing the act charged against them, they were incapable of knowing its wrongfulness."

added). She testified that appellant was incapable of understanding the consequences of his acts. Dr. Ferguson supported her conclusions by testimony which centered on the appellant's intellectual and emotional deficiencies as impacted by the appellant's assertion that he had used drugs and alcohol on the dates in question. She admitted that there was no evidence of psychosis.

Dr. Ferguson further testified that intellectual impairment is not the equivalent of insanity—a view shared by this Court. *West v. State,* 617 P.2d 1362 (Okl.Cr.1980). Ferguson's testimony rejects any synonymity between intoxication and insanity. See *Couch v. State,* 375 P.2d 978 (Okl.Cr.1962). Additionally, her testimony that appellant's emotional development had been severely curtailed we find is without legal consequence. Historically, "knowing" right from wrong has referred to one's mental adroitness and not to some refined sense of moral or ethical obligation. See Note, *Insanity as a Defense to Criminal Responsibility,* 5 Okla. City Univ. L.Rev. 171, 172 (1980); see also *Roe v. State,* 17 Okl.Cr. 587, 191 P. 1048 (1920).

Moreover, it appears from the record that the jury was properly instructed as to both the standard of sanity and the burden of proof. Inasmuch as sanity is a question of fact for the jury, we find the appellant's argument to be without foundation. *Wilson v. State,* 568 P.2d 1279, 1281 (Okl.Cr. 1977); *Stidham v. State,* 507 P.2d 1312, 1319 (Okl.Cr.1973).

■ The next issue is whether the in-court identification of the appellant by the victims should have been suppressed. The appellant complains that the out-of-court identifications of Ford and Hilton were improper. Both witnessed the handcuffed appellant enter the police station on the night in question.

■ However, even if this Court were to find the confrontation procedures unnecessarily suggestive, it does not follow that the identifications should be excluded. In *McDaniel v. State,* 576 P.2d 307 (Okl.Cr.

1978) this Court embraced the holding in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1977). *Neil* held that the admissibility of identifications depends upon their reliability under the totality of circumstances. Further, in *Lee v. State,* 600 P.2d 344 (Okl.Cr.1979), this Court adopted the guidelines of *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Manson* held that reliability of identification is the single determinative quality of admissibility. *Lee* enumerated the factors to be weighed in assessing reliability:

"(1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the length of time between the crime and the confrontation." 600 P.2d at 346;

Applying the above factors to the instant facts, the identifications have an independent basis of reliability. All of the witnesses testified that the appellant was short and black, that he was unmasked, and that the lighting at the rest area was very good. All three had face to face confrontations with the appellant, and all three claimed they could have identified the appellant in the absence of the show-up or photographs. Moreover, both Hilton, who observed the assailant for approximately ten (10) minutes, and Wiedenbach, who distinguished among the photos by facial structure and complexion as well as by height, expressed an unequivocable degree of certainty.

We hold that the in-court identifications were reliable, notwithstanding the irregularities that took place during the out-of-court identifications. See *Hays v. State,* 617 P.2d 223 (Okl.Cr.1980).

■ Rogers' final argument is that the district court erred in refusing to give his requested instruction on the issue of intoxication. Intoxication is a defense when the accused was so intoxicated that his "mental powers had been overcome and it had therefore been impossible for him to form criminal intent." *Miller v. State,* 567 P.2d 105, 109 (Okl.Cr.1977); *Phillips v. State,* 321

P.2d 724 (Okl.Cr.1958). Whether the accused, by reason of intoxication, was unable to form criminal intent was a question for the jury. *Miller v. State*, supra at 109; *Skeen v. State*, 61 Okl.Cr. 188, 66 P.2d 1106, (1937).

The trial court gave the following instruction:

"No acts committed by a person while in a state of voluntary intoxication caused by alcohol or any other drug shall be deemed less criminal by reason of his having been in such condition. The jury may, however, consider his condition in determining if the defendant was capable of forming the necessary criminal intent in the offenses he is charged with."

The above instruction accurately instructs the jury on the defense of voluntary intoxication.

The judgment and sentence is AFFIRMED.

BRETT, P. J., and BUSSEY, J., concur.