Glen Burton AKE, a/k/a Johnny
Vandenover, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–80–523.

Court of Criminal Appeals of Oklahoma.

April 12, 1983.

Richard D. Strubhar, Reta M. Strubhar, Yukon, for appellant.

Jan Eric Cartwright, Atty. Gen., Chief, Appellate Crim. Div., Oklahoma City, for appellee.

## OPINION

BUSSEY, Presiding Judge:

The appellant, Glen Burton Ake, also known as Johnny Vandenover, was convicted by a jury in Canadian County, Oklahoma, of two counts of Murder in the First Degree and two counts of Shooting with Intent to Kill. He was sentenced to death for each of the murder charges, and sentenced to a five-hundred year prison term for each of the shooting with intent to kill counts. He has perfected a timely appeal to this Court.

On the evening of October 15, 1979, in search of a suitable house to burgle, the appellant and his accomplice, Steven Keith Hatch, a/k/a Steve Lisenbee, drove their borrowed car to the rural home of Reverend and Mrs. Richard Douglass. The appellant gained entrance into the Douglass' home under the pretense that he was lost and needed help finding his way. After an initial conversation with sixteen-year-old Brooks Douglass in the entrance way of the Douglass' home, the appellant returned to his car, supposedly to get a telephone number. The appellant thereupon re-entered the house and produced a firearm. He was joined shortly afterwards by his accomplice, who also was armed.

The appellant and his accomplice ransacked the Douglass' home as they held the family at gunpoint. They bound and gagged Reverend Douglass, Mrs. Douglass and Brooks Douglass, and forced them to lie in the living room floor.

The two men then took turns attempting to rape twelve-year-old Leslie Douglass in a nearby bedroom. Having failed in their attempts, they bound and gagged Leslie, and forced her to lie in the living room floor with the other members of her family.

Throughout the episode, the appellant and his accomplice repeatedly threatened to kill all the members of the Douglass family, and covered their heads with articles of clothing as they lay helpless on the floor.

The appellant instructed his accomplice to go outside, turn the car around, and "listen for the sound." The accomplice left the house as he was told. The appellant then shot Reverend Douglass and Leslie each twice with a .357 magnum pistol, Mrs. Douglass once, and Brooks once; and fled.

Mrs. Douglass died almost immediately as a result of the gunshot wound. Reverend Douglass' death was caused by a combination of the gunshots he received, and strangulation from the manner in which he was bound. Leslie and Brooks managed to untie themselves and drive to the nearby home of a doctor.

The appellant and his accomplice were apprehended in Colorado following a month-long crime spree which took them through Arkansas, Louisiana, Texas, and much of the Western half of the United States.

Subsequent to their extradition to Oklahoma, Leslie Douglass identified the appellant in a lineup. The appellant confessed to the shootings.

The error first alleged by the appellant is that the trial court wrongfully refused to grant a change of venue. He argues the pre-trial publicity concerning the crime and events occurring subsequent thereto, including the fact that the appellant's accomplice had earlier been found guilty of the crimes at issue and sentenced to death, was of such an extent as to bias the community against him, thereby denying him the benefit of an impartial jury.

The appellant failed to comply with the statutory procedure for change of venue mandated by 22 O.S.1981, § 561. The motion was not verified by affidavit, nor was it supported by the affidavits of at least three credible persons residing within the county. Thus, the motion not having been properly before the trial court, is likewise not properly before this Court. See, *Irvin v. State,* 617 P.2d 588 (Okl.Cr.1980); *Bruton v. State,* 521 P.2d 1382 (Okl.Cr. 1974); *Adams v. State,* 25 Okl.Cr. 298, 220 P. 59 (1923). The motion was properly overruled.[1]

---

1. The murder/shootings of the Douglass family      attracted a significant amount of media atten-

The appellant next alleges that the trial court erred by not granting a second preliminary hearing in this case. The appellant's preliminary hearing was held conjointly with his accomplice on January 21, 1980. He was ejected from his February 14, 1980, arraignment for disruptive behavior. One week later, the judge who presided at the arraignment, on his own motion, ordered the appellant to undergo psychiatric evaluation. On April 10, 1980, a special sanity hearing was held at which the appellant was found to be mentally ill and ordered committed to Eastern State Mental Hospital for observation and treatment. He was subsequently adjudged competent to stand trial, and the proceedings against him reinstated on May 27, 1980.

The appellant filed a motion requesting a second preliminary hearing. He argued that he was unable to assist his attorneys at the January 21, 1980, preliminary hearing because of his lack of competency. The motion was overruled.

The appellant announced ready at the preliminary hearing. No attempt was made to raise the issue of his ability to assist counsel. We cannot presume, absent any supporting evidence, that the appellant was incompetent at that time. A review of the transcript of the preliminary hearing reveals that the appellant did indeed profit from the preliminary hearing. Counsel for the appellant thoroughly and adequately cross-examined witnesses offered by the State. He raised the issue through cross-examination of the appellant's state of mind during the criminal episode, and challenged one of the surviving victims' identification of the appellant as the man who shot him. The appellant also put on witnesses and obtained copies of police and medical reports.[2]

The appellant failed to preserve the issue in the motion for a new trial. Had any error occurred, it was thereby waived. *Stevenson v. State,* 637 P.2d 878 (Okl.Cr. 1981).

In addition, the appellant has not shown he was prejudiced at trial by the failure to grant the second preliminary hearing. There was no fundamental error. We conclude that the judge did not abuse his discretion.

tion in Oklahoma. Most, if not all, of the jurors in this case had been exposed to various forms of media accounts of the crimes and the events subsequent thereto. The appellant attempts to bolster his contention with the results of a poll conducted on behalf of his accomplice and himself, which indicated that forty-four percent of those surveyed believed the appellant to be guilty prior to his trial. Additionally, the appellant has provided this Court with a copy of an advertisement used by the Sheriff of Canadian County in his bid for re-election, which depicts the handcuffed appellant being escorted by that sheriff. The caption of the picture was, "Quality law enforcement takes a tough, dedicated professional—let's keep Lynn Stedman Sheriff."

It is not necessary that a juror be completely ignorant of the facts and circumstances surrounding a case. It is sufficient if the juror can disregard his/her own opinion and render a verdict based on the evidence presented. *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Russell v. State,* 528 P.2d 336 (Okl. Cr.1974). In this case, after extensive examination by counsel for both sides, each juror stated he/she could do so.

In addition, we note that the trial court did not rule on the motion to change venue until completion of the voir dire to determine the extent of the bias, if any, that existed in the minds of the veniremen. The appellant was afforded wide latitude in examination of the veniremen. This procedure afforded the appellant ample time to weed out unsatisfactory or biased jurors. Moreover, the appellant waived his last two peremptory challenges. Having done so, he cannot complain of juror bias on appeal. *Carpitcher v. State,* 586 P.2d 75 (Okl. Cr.1978).

2. In regard to this matter, we note that the appellant focuses his argument in this allegation of error upon a statement made by the judge while denying the motion. At one point, the judge stated, "It [the preliminary hearing] is not designed as a deposition-type hearing for the defendant to make a great deal of discovery." Although the language of *Beaird v. Ramey,* 456 P.2d 587 (Okl.Cr.1969), reveals the erroneous flavor of the judge's statement, we find it to be of little consequence. As demonstrated in the text, the preliminary hearing did in fact work as a discovery device for the appellant.

Additionally, we note that the judge did not base his ruling solely on this factor. Thus, the appellant's argument, while possessing some merit, gains him nothing.

The appellant alleges in his next assignment of error that a prospective juror was dismissed in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).[3]

We find no error in this matter. The form and substance of the questions were very similar to those we approved in *Chaney v. State,* 612 P.2d 269 (Okl.Cr.1980); and the answers given by the juror indisputably satisfy the Witherspoon concerns. See, 88 S.Ct. at 1777 n. 21.

In addition, the appellant did not examine the prospective juror, did not object when she was excused, and did not preserve the error in the motion for a new trial. Thus, had any error occurred, it was waived. *Hays v. State,* 617 P.2d 223 (Okl. Cr.1980).

The appellant's ninth assignment of error is that he, as an indigent defendant, should have been provided the services of a court-appointed psychiatrist and a court-appointed investigator as incident to his constitutional rights to effective assistance of counsel and availability of compulsory process for obtaining witnesses.

We have held numerous times that, the unique nature of capital cases notwithstanding, the State does not have the responsibility of providing such services to indigents charged with capital crimes. *Irvin v. State,* 617 P.2d 588 (Okl.Cr.1980); and cases cited therein.

In addition, the argument was not preserved in the motion for new trial. It was thereby waived. *Hawkins v. State,* 569 P.2d 490 (Okl.Cr.1977).

The appellant's next two allegations of error concern the fact that he was sustained on 600 milligrams of Thorazine per day throughout his trial. The medication was administered pursuant to the orders of the doctors who treated him at Eastern State Hospital at Vinita. Dr. R.D. Garcia informed Judge Martin (who was originally to preside over the case) by letter dated May 22, 1980, that the appellant was competent to stand trial, and could assist his attorney, provided he continue taking the prescribed medication.

The appellant remained mute throughout the trial. He refused to converse with his attorneys, and stared straight ahead during both stages of the proceedings. He argues that, because of the effect of the Thorazine, he was not actually present at his trial; and thereby denied his statutory and constitutional rights. Secondly, he argues that, due to his conduct at trial, the trial court should have halted the proceedings and impaneled a jury to evaluate his present sanity.

Both of these issues boil down to the question of whether the Thorazine medication rendered him unable to understand the proceedings against him and affected his ability to assist counsel. *Beck v. State,* 626 P.2d 327 (Okl.Cr.1981).

Dr. Garcia testified that he had diagnosed the appellant's condition as schizophrenia of

---

**3.** The appellant's argument revolves around the following dialogue excerpted from the record:

THE COURT: This is a case in which the State of Oklahoma is seeking the death penalty, and I will ask you this question. In a case where the law and the evidence warrant, in a proper case, could you without doing violence to your conscience agree to a verdict imposing the death penalty?

MRS. WOLFE: No, sir, I could not.

THE COURT: All right. Let me ask you this. Knowing that the law provides for the death penalty in certain proper cases, and knowing that the State will ask you to bring back a verdict of death in this case, and considering your reservations about the death penalty, do you have such conscientious opinions as would prevent you from making an impartial decision as to whether the defendant is guilty or not guilty?

MRS. WOLFE: Sir, I could not impose the death penalty on anyone.

THE COURT: All right. I need to ask you one other question. If you found beyond a reasonable doubt that the defendant was guilty of Murder in the First Degree, and if under the evidence, facts, and circumstances of the case, the law would permit you to consider a sentence of death, are your reservations about the death penalty such that regardless of the law, the facts, and circumstances of the case, you still would not consider fairly the imposition of the death penalty?

MRS. WOLFE: No, Sir.

the paranoid type, which necessitated maintenance on the Thorazine to stabilize his personality. Dr. Garcia further testified that, although the dosage of Thorazine which the appellant was taking would sedate a normal individual, it had a theraputic effect of eliminating the symptoms of the appellant's condition. Without the benefit of the medication, the appellant could revert to a violent and dangerous state.

In the letter to Judge Martin, referred to above, Dr. Garcia stated the appellant, with the benefit of medication, was competent to stand trial and assist his attorneys in his defense. The appellant remained on his prescribed medication, and there is no evidence that any change in his competency occurred in the month between his release from Vinita and his trial. Thus, we have no reason to believe the appellant's behavior was caused by any factor other than his own volition.[4]

The appellant additionally asserts that, according to *Peters v. State,* 516 P.2d 1372 (Okl.Cr.1973), the trial court was under a duty to first cite the appellant for contempt of court, and, secondly to bind and gag him before allowing the use of drugs to sedate him through his trial. This argument misconstrues the purpose behind the medication given the appellant. The appellant's disruptive behavior at his preliminary hearing gave rise to the proceedings which eventually led to his commitment at Vinita and ensuing treatment with Thorazine. However, even though the treatment indirectly resulted from the appellant's misbehavior, the Thorazine was not administered to him for the sole purpose of rendering him sufficiently tranquil to facilitate progress of the criminal proceedings instituted against him. Thus, the appellant's reliance on *Peters* is misplaced.

Likewise, we disagree with the contention that the appellant should have been treated as an insane person, incapable of standing trial, because of the necessity of Thorazine treatment to "normalize" him. Psychopharmaceutical restoration of persons to a state of normality is not an uncommon practice in modern society. If a defendant may be rendered competent to assist in his defense through the use of medication, it is in the best interests of justice to afford him a speedy trial. See, *State v. Stacy,* 556 S.W.2d 552 (Tenn.Cr. 1977); and cases cited therein. See also, *State v. Jojola,* 89 N.M. 489, 553 P.2d 1296 (1976).[5]

■ Concerning the trial court's failure to impanel a jury to determine the present sanity of the appellant, we note initially that the appellant's attorneys voluntarily withdrew the motion for trial on present sanity because the appellant had just been returned from Vinita, certified as competent to stand trial. Since the motion was withdrawn, the court obviously had no occasion to rule on it. We cannot say that the court was under a duty to raise the issue *sua sponte.* In light of the facts that the appellant had been released from Vinita one month before, certified as competent to stand trial, and that he was maintaining his medication; the trial court had no good reason to order a trial on the appellant's present sanity. Although the appellant's refusal to communicate with his attorneys was brought to the attention of the trial judge, and although the appellant's demeanor was observable, it does not necessarily follow that the trial court was bound to deduce from such behavior that another hearing was needed.

---

4. It is quite possible that the defense of insanity interposed by the appellant fostered such behavior on his part. Nonetheless, the jury was well aware of the fact that the appellant was being maintained on the Thorazine. The appellant was present throughout the trial, and his demeanor was readily discernable by the jurors. Notwithstanding the appellant's "abnormal" behavior at trial, the jury determined that he was sane.

5. One notable case contra to our holding is *State v. Maryott,* 6 Wash.App. 96, 492 P.2d 239 (1971), wherein it was held that a defendant was improperly tried while being maintained on medication. The defendant in that case stared vacantly ahead throughout the trial as did the appellant in this case. It must be noted, however, that the defendant in that case was taking a combination of several drugs, all of which were known to be strong depressants with notable side effects.

According to the statute authorizing trials on present sanity, a doubt must arise as to the defendant's sanity. 22 O.S.1981, § 1162. The doubt referred to in the statute has been interpreted to be doubt which must arise in the trial court's mind after an evaluation of the facts, information concerning the defendant's insanity and motive. *Beck v. State,* supra. *Reynolds v. State,* 575 P.2d 628 (Okl.Cr.1978); *Russell v. State,* supra. The existence of doubt of the defendant's sanity must arise from facts and circumstances of a substantial character. There must be reason to believe that the defendant's claim of insanity is genuine and not simulated to delay justice. *Bingham v. State,* 82 Okl.Cr. 5, 165 P.2d 646 (1946); *Laslovich v. State,* 377 P.2d 977 (Okl.Cr.1963). The appellant's demeanor was but one factor to consider in light of the facts and circumstances in this case. We cannot say the judge abused his discretion in failing to order a trial on present sanity. *Reynolds,* supra; *Beck,* supra.

The appellant's next two allegations of error concern the confession he gave to the police after his arrest. The confession was forty-four (44) typewritten pages in length. It contained detailed descriptions of the shootings of the Douglass family, as well as events which occurred before and after.

■ Initially, the appellant argues he was insane when he made the confession, thus it was involuntary. However, the appellant failed to establish any doubt of his sanity at the time the crime was committed. The sheriff who took the confession testified the appellant understood his rights, and voluntarily waived them. The confession was lucid and detailed. The appellant read the lengthy typewritten copy of the confession, corrected spelling errors and filled in missing details. Lastly, although the appellant was adjudged incompetent to stand trial approximately five months after the crime was committed, none of the psychologists who examined him could offer an opinion of the state of the appellant's mental condition prior to the time they observed him.

We are of the opinion the confession was knowingly and voluntarily given. See, *Wadkins v. State,* 572 P.2d 998 (Okl.Cr. 1977).

The appellant's second allegation concerning the confession stems from the fact that the trial court deleted parts of the confession, because it contained information of other crimes committed by the appellant and his accomplice subsequent to the Douglass shootings. The deleted confession contained blank spaces and blank pages. The appellant maintains that the confession, in its deleted form, was prejudicial.

■ This allegation of error was not preserved in the motion for new trial. It has thus not been properly preserved for appeal. *Turman v. State,* 522 P.2d 247 (Okl.Cr.1974). In addition, we do not agree that the appellant was prejudiced by the form of the confession.

■ In the appellant's fifth assignment of error, he argues that numerous photographs were unduly prejudicial and should not have been admitted into evidence. A review of both the trial transcript and the exhibits before us in the record reveals that all but one of the photographs complained of were indeed excluded by the trial court pursuant to the appellant's objection. The photograph which was admitted over the appellant's objections portrayed the nature in which one of the victim's feet were bound. The photograph served to demonstrate how the appellant in this case rendered his victim helpless before he brutally murdered him. The photograph was not gruesome, and did not unfairly prejudice the appellant. The trial court did not abuse its discretion in admitting the picture. *Holloway v. State,* 602 P.2d 218 (Okl.Cr.1979).

Next, the appellant alleges the trial court erred by allowing Brooks and Leslie Douglass, the two surviving victims, to testify concerning the appellant and his cohort's attempt to rape Leslie. He additionally argues that the trial court erroneously failed to instruct the jury concerning the alleged other crimes.

■ The appellant failed to object to the testimony of which he now complains. Additionally, he failed to include it in the motion for new trial. The appellant has completely failed to bring the error, if any, to the attention of the trial court. As we stated in *Burks v. State,* 594 P.2d 771 (Okl. Cr.1979), it is incumbent upon the defense attorney to raise an objection to the introduction of evidence of other crimes, lest the error be waived.

■ In addition, we hold that the admission of the testimony and the trial court's failure to give a limiting instruction was harmless. The evidence presented against the appellant in both stages of the trial was overwhelming. We are convinced that the jury would have rendered the same verdict and imposed the same sentences had the evidence not been presented, or had the instruction been given. *Burks* supra; *Luman v. State,* 626 P.2d 869 (Okl.Cr.1981).

The appellant's twelfth and thirteenth allegations are that the prosecutor impassioned the jury with improper arguments in both stages of the trial.

■ The prosecutor stated numerous times in the closing argument of the first stage that there was "no doubt" the appellant was guilty. The prosecutor was permissibly arguing the State's conclusions based upon the evidence in the case. *Williams v. State,* 557 P.2d 920 (Okl.Cr.1976). In addition, the authority cited by the appellant in support of his argument are clearly inapplicable. See, *Evans v. State,* 546 P.2d 284 (Okl.Cr.1976) (wherein the prosecutor stated, "And I think you'll return a verdict of guilty because that's what I think he is.").

■ The prosecutor in this case also stated that, "If we hadn't had these charges pending, he [the appellant] would have gone out on the street a free man." The statement was made in response to the appellant's argument that, if found to be insane, he would not be "turned loose." The prosecutor argued that the appellant had been sent to a mental hospital, treated and released. Thus, the gist of the prosecutor's argument was that the appellant would be, in effect, set free if found to be insane.

Although the prosecutor would have been better advised not to make such an argument, we do not find it of such magnitude to mandate modification or reversal. *Chaney v. State,* 612 P.2d 269 (Okl.Cr.1980). The jury was properly instructed concerning the consequences of an innocent by reason of insanity verdict. In addition, the evidence against the appellant was so overwhelming that it is inconceivable the verdict was based solely on such a remark. *Chaney,* supra.

■ The appellant additionally complains of remarks made by the prosecutor during the second stage of the trial. The appellant admits in his brief that no objections were made. After careful examination of the record, we can find no error which rises to the level of fundamental error.

The appellant's tenth assignment of error concerns a note from the jury in which it was requested that the testimony of Dr. R.D. Garcia, a psychologist who testified for the defense, be repeated. The trial court declined to have a transcript of the testimony sent to the jury. The appellant alleges error on two grounds; first, that the jurors were not brought into open court for consideration of the note, pursuant to 22 O.S. 1981, § 894, and secondly that Dr. Garcia's testimony was not read to the jury.

■ The appellant failed to object to the jury's absence during the court's discussion of the note. In addition, he failed to properly preserve the arguments for appeal in the motion for new trial. Nonetheless, we note that the trial court replied to the jury's request in writing, and that counsel for both sides were given opportunity to object to both the form and substance of the note. As we stated in *Boyd v. State,* 572 P.2d 276 (Okl.Cr.1977), the purpose of 22 O.S.1981, § 894, is to prevent certain communications from being made outside of open court which might influence the jury when both parties have not at least had a chance to be present to protect their inter-

ests. Thus, although the jury should have been returned to the courtroom pursuant to § 894, failure to do so here was harmless. *Boyd,* supra; see also, *Starr v. State,* 602 P.2d 1046 (Okl.Cr.1979).

In response to the appellant's second argument that the jury should have been allowed to rehear Dr. Garcia's testimony, we note that the decision to allow or disallow the jury's request lies within the discretion of the trial court. *Jones v. State,* 456 P.2d 610 (Okl.Cr.1969). The appellant contends that, as evidenced by the "choppy record," it was difficult for the jury to understand Dr. Garcia's testimony. We cannot agree with the appellant's assessment of the nature of Dr. Garcia's transcribed testimony. From the record before us, we have no reason to believe that the jury did not hear and understand Dr. Garcia's testimony as it was given in court. Accordingly, we decline to hold that the trial court abused its discretion. *Jones,* supra.

The appellant next alleges that the lack of air conditioning in the courthouse in which the trial and jury deliberations were conducted forced the jury to return the verdict without proper deliberation. The appellant has failed to cite, nor can we find, any evidence in the record to support such a contention. Although the courtroom may have been somewhat uncomfortable, there is no evidence that the jury failed to exercise utmost diligence in reaching its verdict. Indeed, upon having been given the opportunity to recess for the night, and wait until the following morning to begin deliberations in the second stage, the jury elected to remain and deliberate. The contention is clearly without merit.

In his fifteenth allegation of error, the appellant maintains that the verdict was against the clear weight of the evidence. He argues the jury should have returned a verdict of not guilty by reason of insanity.

In every case there is an initial presumption of sanity. This presumption remains until the defendant raises, by sufficient evidence, a reasonable doubt as to his sanity at the time of the crime. If the issue is so raised, the burden of proving the defendant's sanity beyond a reasonable doubt falls upon the State. *Rogers v. State,* 634 P.2d 743 (Okl.Cr.1981); *Richardson v. State,* 569 P.2d 1018 (Okl.Cr.1977).

The appellant had no history of mental illness. When each of the three doctors who testified on behalf of the appellant was asked whether he had an opinion as to the appellant's ability to distinguish between right and wrong at the time of the shootings, each answered in the negative. They could only testify as to their opinions that the appellant was "mentally ill" several months after the crimes had occurred.

The appellant clearly failed to establish any reasonable doubt as to his sanity at the time the crimes were committed. The jury was properly instructed concerning the standard of sanity and the burden of proof. We cannot agree that the jury's verdict was against the weight of the evidence. *Rogers,* supra.

The appellant's eighteenth assignment of error is that the accumulation of errors alleged in the foregoing assignments of error mandates reversal in this case. We have held in the past that if a defendant's previous assignments of error are found to be without merit, the argument which asks that those previous allegations be considered collectively is likewise without merit. *Brinlee v. State,* 543 P.2d 744 (Okl.Cr. 1975); *Haney v. State,* 503 P.2d 909 (Okl.Cr. 1972). Since we have found all of the appellant's allegations of error to be without merit, we find this argument meritless also.

The appellant's seventeenth allegation of error is that the felony-murder doctrine is unconstitutional. This allegation is not properly before this Court, as it was not preserved in the motion for new trial. *Turman v. State,* supra.

The appellant argues in his nineteenth assignment of error that the statutory scheme of 21 O.S.1981, § 701.11 unconstitutionally shifts the burden of proving mitigating circumstances onto defendants in

capital cases after aggravating circumstances are proven by the State.

We note initially that the issue is not properly before this Court, because it was not preserved in the motion for new trial. *Turman v. State,* supra. Nonetheless, due to the nature of the contention, we shall consider it.

In support of his contention, the appellant cites *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In Re: Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Bauer v. State,* 3 Okl.Cr. 529, 107 P. 525 (1910); *Meadows v. State,* 487 P.2d 359 (Okl.Cr.1971); and *Pettigrew v. State,* 554 P.2d 1186 (Okl.Cr.1976). None of the authority cited supports the appellant's contention. These cases stand for the rule that a defendant in a criminal case cannot be constitutionally required to produce evidence to negate or mitigate the degree of a criminal charge against him. *Mullaney v. Wilbur,* supra.

In the present case, the statute in question addresses the nature of the punishment to be imposed *after* the determination of guilt has been made. Thus, the considerations relevant to the guilt determination espoused in the cases cited by the appellant are inapplicable. The appellant was not *required* to produce any evidence in support of mitigation at all. However, since he chose to have the jury consider factors which he hoped to justify his appeal for leniency, it was incumbent upon him to prove their existence. The defendant is in the best position to know of and present evidence in mitigation. See, *State v. Watson,* 120 Ariz. 441, 586 P.2d 1253 (Ariz.Sup. 1978). To hold a defendant in a capital case to proof of mitigating circumstances in the sentencing stage of a bifurcated trial, should he so chose to raise them, is not contrary to the Due Process principle that the State must carry the burden of proving a defendant's guilt beyond a reasonable doubt. *Winship,* supra; *Mullaney,* supra; *Watson,* supra.

■ Lastly, we review the sentences imposed upon the appellant as mandated by 21 O.S.1981, § 701.13.

We are of the opinion that the sentences were not imposed under the influence of passion, prejudice or any other arbitrary factor. Our discussion of the appellant's various allegations concerning this issue in the text of this opinion reveal that the appellant's sentences were imposed in accordance with the evidence presented, free from the taint of passion and prejudice. In addition, as previously discussed, the evidence against the appellant was overwhelming in both stages, and provide ample justification for the penalty imposed.

Likewise, we are of the opinion the evidence supports the finding of the aggravating circumstances. The jury found the aggravating circumstances justifying the imposition of the death penalty to be: 1) that the murder was especially heinous, atrocious or cruel; 2) that the murders were committed to avoid or prevent a lawful arrest or prosecution; and 3) that a probability existed that the appellant would commit criminal acts of violence that would constitute a continuing threat to society.

The appellant in this case invaded the sanctity of his victims' home, bound each one and forced them to lie in the floor. The appellant and his accomplice discussed killing the family, and made them promise not to call the police if allowed to live. Unheeded by Mrs. Douglass' plea for their lives, the appellant ruthlessly emptied a .357 magnum pistol into the bodies of the helpless victims before he fled their home. We believe the facts adequately support each of the three aggravating circumstances found by the jury.

Lastly, we find that the sentences of death are not excessive or disporportionate to those imposed in other cases.[6]

---

**6.** *Smith v. State,* 659 P.2d 330, 54 OBAJ 452 (Okl.Cr.1983); *Parks v. State,* 651 P.2d 686 (Okl.Cr.1982); *Jones v. State,* 648 P.2d 1251 (Okl.Cr.1982); *Hays v. State,* 617 P.2d 223 (Okl.Cr.1980); *Eddings v. State,* 616 P.2d 1159 (Okl.Cr.1980) (remanded for resentencing, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1); *Chaney v. State,* 612 P.2d 269 (Okl.Cr.1980).

We have also compared this case to other capital cases which have been modified to life or reversed for other reasons.[7]

Having fully reviewed the record and arguments presented on appeal, we find no reason to interfere with the jury's decision. The judgments and sentences are AFFIRMED.

CORNISH and BRETT, JJ., concur.

**7.** *Jones v. State,* 660 P.2d 634, 54 OBAJ 661 (Okl.Cr.1983); *Driskell v. State,* 659 P.2d 343, 54 OBAJ 460 (Okl.Cr.1983); *Boutwell v. State,* 659 P.2d 322, 54 OBAJ 402 (Okl.Cr.1983); *Munn v. State,* 658 P.2d 482, 54 OBAJ 402 (Okl.Cr.1983); *Odum v. State,* 651 P.2d 703 (Okl.Cr.1982); *Hall v. State,* 650 P.2d 893 (Okl.Cr.1982); *Brewer v. State,* 650 P.2d 54 (Okl.Cr.1982); *Burrows v. State,* 640 P.2d 533 (Okl.Cr.1982); *Franks v. State,* 636 P.2d 361 (Okl.Cr.1981); *Irvin v. State,* 617 P.2d 588 (Okl.Cr.1980); *Hager v. State,* 612 P.2d 1369 (Okl.Cr.1980).