**Roy Martin PUGH, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–86–279.**

Court of Criminal Appeals of Oklahoma.

Oct. 24, 1989.

David Autry, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Wellon B. Poe, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

PARKS, Presiding Judge:

Appellant, Roy Martin Pugh, was tried by jury and convicted of First Degree Murder (21 O.S.Supp.1988, 701.7(C)) in Osage County District Court, Case No. CRF–85–30, before the Honorable Mermon H. Potter. The jury set punishment at life imprisonment. Judgment and sentence was imposed accordingly. We reverse and remand for a new trial.

Because appellant's fourth proposition of error is dispositive of this case, we will not address the remaining propositions. Briefly stated, the facts are as follows: Kimberly Ransome, a two-year old child, was beaten severely by seventeen (17) year old appellant, who was babysitting the child while her mother was working. Upon returning home, Angela Rucker, Kimberly's mother, noticed bruises on Kimberly's face and realized that Kimberly was unconscious. She, along with appellant, rushed the child to the hospital. Three days later, Kimberly died as a result of her injuries. Appellant's sole defense was that of insanity. He presented expert and lay testimony, which revealed his severely troubled past. Dr. Hamilton, an expert in child psychiatry, testified that appellant had quite possibly dissociated himself from his actions, thereby not seeing his conduct as a product of his own thinking.

Appellant urges that the trial court committed reversible error by refusing to instruct the jury as to the complete definition of insanity. At trial, defense counsel presented a requested instruction which was identical to Oklahoma Uniform Jury Instruction—Criminal, Instruction Number 729:

A person is insane when that person is suffering from such a disability of reason or disease of the mind that he/she does not know that his/her acts or omissions are wrong and is unable to distinguish right from wrong with respect to his/her acts or omissions. **A person is**

also insane when that person is suffering from such a disability of reason or disease of the mind that he/she does not understand the nature and consequences of his/her acts or omissions.

(Emphasis Added) Both parties agreed that an instruction on insanity was required under *Broaddrick v. Oklahoma*, 706 P.2d 534, 536 (Okla.Crim.App.1985); however, the prosecution argued that the second sentence of the requested instruction was redundant and confusing. The trial court agreed, and refused to give the full and complete instruction to the jury. Instead, the trial court, omitting the second sentence, instructed the jury only that appellant could be found insane if he was suffering from such a disability or disease of the mind that he was unable to distinguish right from wrong.

Appellant claims that this omission was critical insofar as it narrowed the definition of insanity. The State agrees that the trial court could have properly given the instruction requested by appellant, but urges that it was not necessary to do so. As a basis for this claim, the State cites *Munn v. State*, 658 P.2d 482, 484 (Okla.Crim.App. 1983) for the proposition that the instruction is "more broad and encompassing than required by Oklahoma case law." *Brief of Appellee*, at 20. In *Munn*, this Court, addressing the issue of whether the State adequately rebutted the defense of insanity, stated that after the defendant raises a reasonable doubt as to his sanity, it becomes the State's burden to prove "that the defendant could distinguish between right and wrong...." From this language, the State surmises that the second test of *M'Naghten* regarding "nature and consequences" has been abandoned by this Court insofar as it was not mentioned in *Munn*.

■ Thus, the first issue before this Court is whether the second prong of *M'Naghten* has been abandoned by this Court. Concededly, it has long been held that *M'Naghten* is the only test used to determine criminal responsibility in Oklahoma. *Walker v. State*, 723 P.2d 273, 282 (Okla.Crim.App.1986), *cert. denied*, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600; *Jones v. State*, 648 P.2d 1251, 1254 (Okla. Crim.App.1982).[1] Furthermore, in *Jones*, 648 P.2d at 1254, this Court specifically held a defendant was legally insane if "during the commission of the crime he was suffering from a mental disease or defect rendering him unable to differentiate between right and wrong, or unable to understand the nature and consequences of his acts." *See also Richardson v. State*, 569 P.2d 1018, 1019 (Okla.Crim.App.1977); *Hair v. State*, 532 P.2d 72, 76 (Okla.Crim. App.1975). This language followed explicitly the rule set forth in *M'Naghten's Case*, 8 Eng.Rep. 718 (1843), and clearly shows that both prongs of the *M'Naghten* test are applied in Oklahoma. Therefore, after full consideration, we continue to adhere to both prongs of the *M'Naghten* test.

■ Having determined that both prongs are applicable, it is clear that the trial court erred by refusing to give the complete instruction requested by appellant. Our next determination is whether the trial court's error necessitates reversal. We hold that it does.

At trial, the prosecutor argued that the second sentence of Instruction Number 729 was redundant and confusing. He claimed that the language referring to the "nature and consequences" of a defendant's actions merely explained in more detail the meaning of "right from wrong" as used in the preceding sentence. Although this Court has never had the opportunity to consider

1. Title 21 O.S.1981, § 152(4) is the legislative authority relied on by this Court in holding that *M'Naghten* is the only test used to determine criminal responsibility in Oklahoma. *See* Comments, *Oklahoma Uniform Jury Instructions—Criminal*, Instruction Number 729. Section 152 specifically mentions the "right and wrong" prong of M'Naghten. Although no mention of the "nature and consequences" prong is mentioned in Section 152, this Court has interpreted

Section 152 to include both prongs of *M'Naghten*. *Jones*, 648 P.2d at 1254. Unlike *State v. Patterson*, 740 P.2d 944 (Alaska 1987), wherein the Alaska legislature specifically enacted legislation omitting one prong of the *M'Naghten* test, thereby disapproving the judicial interpretation of the statutory insanity defense, the Oklahoma legislature has never indicated that our judicial interpretation is inconsistent with the intent of Section 152.

this question, several other courts have confronted the issue. In *Price v. Commonwealth*, 228 Va. 452, 323 S.E.2d 106, 110 (1984), the Supreme Court of Virginia held that the two parts of *M'Naghten* are disjunctive and separate ways of determining that a defendant is legally insane:

The first portion of *M'Naghten* relates to an accused who is psychotic to an extreme degree. It assumes an accused who, because of mental disease, did not know the nature and quality of his act; he simply did not know what he was doing. For example, in crushing the skull of a human being with an iron bar, he believed that he was smashing a glass jar. The latter portion of *M'Naghten* relates to an accused who knew the nature and quality of his act. He knew what he was doing; he knew that he was crushing the skull of a human being with an iron bar. However, because of mental disease, he did not know know that what he was doing was wrong. He believed, for example, that he was carrying out a command from God. 2 C. Torcia, *Wharton's Criminal Law* § 100, at 9 (14th ed. 1979) (footnotes omitted).

As explained by the Iowa Supreme Court in *State v. Thomas*, 219 N.W.2d 3, 6 (Iowa 1974), a defendant is entitled to an acquittal "if he knew what he was doing [but] he did not know it was wrong, or vice versa." Thus, these two prongs of *M'Naghten* essentially set forth two separate and distinct ways that a defendant may be determined legally insane. *See also State v. Mancuso*, 364 S.E.2d 359, 363 (N.C.1988); *State v. Box*, 109 Wash.2d 320, 745 P.2d 23, 25 (1987); *State v. Lawton*, 241 Kan. 140, 734 P.2d 1138, 1141 (1987); *State v. Humanik*, 199 N.J.Super. 283, 489 A.2d 691, 699 (Ct. App.Div.1985); *People v. Guillen*, 217 Cal. Rptr. 685, 704 P.2d 752 (1985); *State v. Chavez*, 143 Ariz. 238, 693 P.2d 893, 894 (1985); *Edwards v. State*, 441 So.2d 84, 86 (Miss.1983); *State v. Barfield*, 298 N.C. 306, 259 S.E.2d 510, 528–29 (1979), *cert. denied*, 448 U.S. 907, 100 S.Ct. 3050, 65 L.Ed.2d 1137 (1980).

By refusing appellant's requested instruction, the trial court eliminated from the jury's consideration one distinct and separate avenue under which appellant could have been determined to be legally insane. As in *Price*, 323 S.E.2d at 110, we find this to be reversible error. Although the State asserts such error is harmless, we believe appellant was deprived of a fair and impartial trial because the jury was not given complete instructions in conformance with the *M'Naghten* rule. *See Johnson v. State*, 693 P.2d 1, 2 (Okla.Crim.App.1984); *Perkins v. State*, 492 P.2d 383, 384 (Okla. Crim.App.1971).

For the reasons discussed above, this cause is REVERSED and REMANDED for a NEW TRIAL.

LUMPKIN, J., concurs.

LANE, V.P.J., concurs in result.

BRETT, J., dissents.

LANE, Vice Presiding Judge: concurring in result.

The appellant has raised valid propositions of error in addition to those addressed by the majority. Because this case has been reversed and remanded for new trial, these assertions should be addressed to provide guidance to the trial court.

Appellant alleges, and I agree, that his conviction was improper because the trial court allowed irrelevant and prejudicial comments by the prosecutor and witnesses into evidence, over objections of counsel, without admonishing the jury. Although the trial court generally has the discretion to ascertain the relevance of the evidence, *Behrens v. State*, 699 P.2d 156, 158 (Okl. Cr.1985), abuse of such discretion is grounds for reversal. *Id.* The instant facts unmistakably require reversal, as the testimony allowed into evidence totally lacks probative value.

Appellant first complains of the testimony of juvenile case worker, Patricia Bilyeu. In response to the prosecutor's questions, and after being ruled an expert witness, Miss Bilyeu speculated that, "if he [Appellant] were to walk out of here without any assistance in dealing with things ... I do believe this very same thing could happen ... again." Tr. 15, 16.

This evidence is irrelevant on its face. The statutory definition of "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." 12 O.S. 1981, § 2401. Also *see, Behrens v. State,* 699 P.2d 156 (Okl.Cr.1985); *President v. State,* 602 P.2d 222 (Okl.Cr.1979). Clearly, the witness' testimony as to the appellant's future conduct is speculative and has no probative value. In no way does it make the material fact at issue, whether appellant committed First Degree Murder (21 O.S.1981, 701.7(C)), more or less probable. *Behrens,* at 158. To permit this type of evidence could cause a defendant to be convicted for what he might do rather than for what he has done. Such testimony may be admissible in the sentencing stage of a murder in the first degree trial, but it is not admissible in the guilt stage. *See Brewer v. State,* 650 P.2d 54 (Okl.Cr.1982).

Appellant also complains of the testimony of psychiatrist Hamilton. Because Hamilton's testimony was similar to Miss Bilyeu's, the same reasoning applies. Therefore, it was error to allow this testimony due to a complete lack of relevance.

For the foregoing reasons, I find the trial court abused its discretion in allowing irrelevant and prejudicial testimony. I therefore concur that this case is REVERSED and REMANDED FOR A NEW TRIAL consistent with this opinion.