IN RE ADOPTION OF THE 2018 REVISIONS TO THE OKLAHOMA UNIFORM JURY INSTRUCTIONS-CRIMINAL (SECOND EDITION)



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN RE ADOPTION OF THE 2018 REVISIONS TO THE OKLAHOMA UNIFORM JURY INSTRUCTIONS-CRIMINAL (SECOND EDITION)

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN RE ADOPTION OF THE 2018 REVISIONS TO THE OKLAHOMA UNIFORM JURY INSTRUCTIONS-CRIMINAL (SECOND EDITION)
2018 OK CR 23
Case Number: CCAD-22018-2
Decided: 07/27/2018
IN RE ADOPTION OF THE 2018 REVISIONS TO THE OKLAHOMA UNIFORM JURY INSTRUCTIONS-CRIMINAL (SECOND EDITION)

Cite as: 2018 OK CR 23, __ __

 

ORDER ADOPTING AMENDMENTS TO OKLAHOMA
UNIFORM JURY INSTRUCTIONS-CRIMINAL (SECOND EDITION)
¶1 On April 28, 2018, The Oklahoma Court of Criminal Appeals Committee for Preparation of Uniform Jury Instructions submitted its report and recommendations to the Court for adoption of amendments to Oklahoma Uniform Jury Instructions-Criminal (Second Edition). The Court has reviewed the report by the Committee and recommendations for the adoption of the 2018 proposed revisions to the Uniform Jury Instructions. Pursuant to 12 O.S.2011, § 577.2, the Court accepts that report and finds the revisions should be ordered adopted.
¶2 IT IS THEREFORE ORDERED ADJUDGED AND DECREED that the report of The Oklahoma Court of Criminal Appeals Committee for Preparation of Uniform Jury Instructions shall be accepted, the revisions shall be available for access via the internet from this Court's web site at www.okcca.net on the date of this order and provided to West Publishing Company for publication. The Administrative Office of the Courts is requested to duplicate and provide copies of the revisions to the judges of the District Courts and the District Courts of the State of Oklahoma are directed to implement the utilization of these revisions effective on the date of this order.
¶3 IT IS FURTHER ORDERED ADJUDGED AND DECREED the amendments to existing OUJI-CR 2d instructions, and the adoption of new instructions, as set out in the following designated instructions and attached to this order, are adopted, to wit:
2-23; 2-24; 2-25; 4-26; 4-56A; 4-56B; 4-57; 4-57A; 4-57B; 4-58; 4-58A; 4-58A-1; 4-64; 4-65; 4-87B; 4-96A; 4-138; 4-138A; 8-31; 8-31A; 8-32; 8-33; 8-33A; 8-33B; 8-33C; 8-34; 10-13. 
¶4 The Court also accepts and authorizes the updated committee comments to be published, together with the above styled revisions and each amended page in the revisions to be noted at the bottom as follows "(2018 Supp.)".
¶5 IT IS THE FURTHER ORDER OF THIS COURT that the members of the Oklahoma Court of Criminal Appeals Committee for Preparation of Uniform Criminal Jury Instructions be commended for their ongoing efforts to provide up-to-date Uniform Jury Instructions to the bench and the bar of the State of Oklahoma.
¶6 IT IS SO ORDERED.
¶7 WITNESS OUR HANDS AND THE SEAL OF THIS COURT this 27th day of July, 2018.
/s/GARY L. LUMPKIN, Presiding Judge
/s/DAVID B. LEWIS, Vice Presiding Judge
/s/ROBERT L. HUDSON, Judge
/s/DANA KUEHN, Judge
/s/SCOTT ROWLAND, Judge
ATTEST:
/s/John D. Hadden
Clerk




F. ATTEMPT OR THREATEN VIOLENCE
OUJI-CR 2-23
ATTEMPT ACT OF VIOLENCE - ELEMENTS
No person may be convicted of attempting to perform an act of violence unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:
First, willfully;
Second, attempting/conspiring/endeavoring;
Third, to perform an act of violence; 
Fourth, involving/(intended to involve) (serious bodily harm to)/(the death of) another person.
______________________________
Statutory Authority: 21 O.S. 2011, § 1378(A). 
Notes on Use
For an Instruction on attempt, see OUJI-CR 2-11, supra. For an Instruction on conspiracy, see OUJI-CR 2-17, supra. For a definition of endeavoring, see OUJI-CR 6-16, infra. 




OUJI-CR 2-24
THREATEN ACT OF VIOLENCE - ELEMENTS
No person may be convicted of threatening to perform an act of violence unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:
First, willfully;
Second, threatening;
Third, to perform an act of violence;
Fourth, involving/(intended to involve) (serious bodily harm to)/(the death of) another person.
______________________________
Statutory Authority: 21 O.S. 2011, § 1378(B).




OUJI-CR 2-25
PLAN TO CAUSE (SERIOUS BODILY INJURY)/DEATH - ELEMENTS
No person may be convicted of planning to cause (serious bodily harm to)/(the death of) another person unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:
First, willfully;
Second, devising a plan/scheme/program of action;
Third, involving/(intended to involve) (serious bodily harm to)/(the death of) another person;
Fourth, with the intent to perform a malicious act of violence.
______________________________
Statutory Authority: 21 O.S. 2011, § 1378(C).




OUJI-CR 4-26
ASSAULT AND BATTERY - ELEMENTS
No person may be convicted of assault and battery unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:
First, willful;
Second, unlawful;
Third, use of force or violence;
Fourth, upon another person.
______________________________
Statutory Authority: 21 O.S. 1991 2011, §§ 641, 642.
Committee Comments
Simple assault, simple battery, and simple assault and battery are misdemeanor crimes in Oklahoma. Oklahoma defines an assault in accordance with both of the common law definitions: an attempt to commit a battery, or the intentional placing of another in apprehension of receiving an immediate battery. Minnix v. State, 1955 OK CR 37, 282 P.2d 772 (Okl. Cr. 1955); Dunbar v. State, 1942 OK CR 150, 75 Okl. Cr. 275, 131 P.2d 116, 75 Okl. Cr. 275 (1942), overruled on other grounds, Parker v. State, 1996 OK CR 19, ¶ 23, n.4, 917 P.2d 980, 986 n.4 (Okl.Cr. 1996); Tyner v. United States, 1909 OK CR 108 2 Okl. Cr. 689, 103 P. 1057, 2 Okl. Cr. 689 (1909). See generally R. Perkins, Criminal Law 114-27 (2d ed. 1969). 
Simple battery is also defined in Oklahoma in accordance with the common law concept. It is an unlawful beating, or use of wrongful physical violence or constraint upon the person of another, without that person's consent. Minnix v. State, supra. See generally R. Perkins, Criminal Law 107-13 (2d ed. 1969). 
Every battery, by definition, includes an assault, although an assault can be perpetrated without a battery. The Court of Criminal Appeals has held that, when an assault culminates in a battery, the offense is assault and battery, and prosecution should be commenced for that grade of assault and battery which is reasonably supported by the State's proof of the facts. Hall v. State, 1957 OK CR 34, 309 P.2d 1096. 
Specific intent is not an element of simple assault, simple battery, or simple assault and battery. Hainta v. State, 1979 OK CR 61, 596 P.2d 906; Morris v. State, 1973 OK CR 421, 515 P.2d 266. 
In Steele v. State, 1989 OK CR 48, ¶12, 778 P.2d 929, 931, the Court of Criminal Appeals held that only the slightest force or touching is necessary to constitute the force required for battery. This degree of force is reflected by the definition of force in OUJI-CR 4-28. The "force or violence" constituting a battery will generally be direct and of such a nature as to produce physical injury. However, although there is a dearth of Oklahoma cases defining the nature and degree of "force or violence" required to establish a battery, it is settled in the vast majority of jurisdictions that any unconsented, offensive touching suffices as proof of "force." See, e.g., State v. Brewer, 31 Del. 363, 114 A. 604 (1921); Smith v. State, 85 Ga. App. 215, 68 S.E.2d 719 (1952); Commonwealth v. McCan, 277 Mass. 199, 178 N.E. 633 (1931); State v. Cruikshank, 13 N.D. 337, 100 N.W. 697 (1904); Weaver v. State, 66 Tex. Crim. R. 366, 146 S.W. 927 (1912); Wood v. Commonwealth, 149 Va. 401, 140 S.E. 114 (1927); Lynch v. Commonwealth, 131 Va. 762, 109 S.E. 427 (1921). 




OUJI-CR 4-56A
LOITERING BY A PERSON REQUIRED TO REGISTER AS A SEX OFFENDER -- ELEMENTS 
No person may be convicted of loitering by a person required to register as a sex offender unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:
First, [Name of Defendant] was convicted of a crime that required him/her to register as a sex offender; and
Second, while required to register as a sex offender he/she knowingly;
Third, was loitering within 500 feet of a/an [elementary/(junior high)/high school]/[licensed child care facility]/park/playground.
Loitering means to stand around or move slowly about; to spend time idly; to saunter; to delay; to linger; to lag behind.
[Loitering does not include:
(A (custodial parent)/(legal guardian) of a student enrolled at the school/(child care facility) who is enrolling/delivering/retrieving the student at the school/(child care facility) [during regular school/facility hours]/(for (school-sanctioned)/(child-care-facility-sanctioned) extracurricular activities].
OR
(A person receiving medical treatment at a hospital/(a facility certified/ licensed by the State of Oklahoma to provide medical services), unless it is any form of psychological, social or rehabilitative counseling services or treatment programs for sex offenders).
OR
(A person attending a recognized church/(religious denomination) for worship if he/she has notified the religious leader of his/her status as a registered sex offender and he/she was granted written permission by the religious leader).]
______________________________
Statutory Authority: 21 O.S. Supp. 2017, § 1125.
Notes on Use
The trial judge should use the bracketed exceptions at the end of the instructions only if they are supported by the evidence. This Instruction should be modified as appropriate, if the defendant was convicted in another jurisdiction of an offense which would require registration if the defendant had been convicted in Oklahoma of that offense. See 21 O.S. Supp 2017, § 1125(A)(1). 
Committee Comments
The Oklahoma Court of Criminal Appeals held that 21 O.S. Supp. 2010, § 1125 was not unconstitutionally vague in Weeks v. State, 2015 OK CR 16, ¶¶ 20-26, 362 P.3d 650, 656-57, and Engles v. State, 2015 OK CR 17, ¶ 6, 366 P.3d 311, 314. In Weeks, the Court of Criminal Appeals distinguished two of its previous decisions in which anti-loitering ordinances in Oklahoma City and Tulsa had been struck down on the ground that they were unconstitutionally vague. The Court explained that in contrast to the anti-loitering ordinances in its previous decisions, § 1125 includes exemptions that provide guidance as to what is and what is not prohibited and "the statute clearly defines the prohibited conduct through reference to the only conduct that is permitted." Weeks v. State, 2015 OK CR 16, ¶ 26, 362 P.3d 657. Similarly, in Engles, the Court decided that the exemptions in § 1125 avoided unconstitutional vagueness. The Court held: "By operation of these specific statutory exemptions, any sex offender convicted of a registerable offense involving a victim under thirteen, who is present in the zone of safety without a statutory exemption and the required prior notice to administrators is, by definition, loitering in violation of the law." 2015 OK CR 17, ¶ 6, 366 P.3d 311, 314 (emphasis in original). 




OUJI-CR 4-56B
AGGRAVATED/HABITUAL SEX OFFENDER IN A PARK -- ELEMENTS 
No person may be convicted of entering a park by a/an aggravated/ habitual sex offender unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:
First, [Name of Defendant] had been designated as a/an aggravated/ habitual sex offender ; and
Second, he/she knowingly;
Third, entered a park.
OR
First, [Name of Defendant] was convicted of an offense in another state/ country that if committed in Oklahoma would designate [Name of Defendant] as a/an aggravated/habitual sex offender ; and
Second, he/she knowingly;
Third, entered a park.
A park is any outdoor public area specifically designated as being used for recreational purposes that is operated/supported in whole or in part by a (homeowners' association)/city/town/county/state/(federal/tribal governmental authority).
______________________________
Statutory Authority: 21 O.S. Supp. 2017, § 1125(A)(2).




OUJI-CR 4-57
CRIMES AGAINST UNBORN CHILDREN -
DEFINITION AND LIMITATIONS 
A "person/(human being)" shall include an unborn child. An "unborn child" means an unborn offspring of human beings from the moment of conception, through pregnancy, and until live birth.
____________________________
Statutory Authority: 21 O.S. Supp. 2007 2011, §§ 652, 691(B), 713; 61 O.S. 2011, § 1-730(4).
Notes on Use
This instruction should be given along with OUJI-CR 4-4, 4-5, 4-6, 4-7, 4-8, 4-61, 4-64, 4-91, 4-92, 4-94, 4-95, 4-96A, or 4-105, supra, in cases where the victim was an unborn child. OUJI-CR 4-57A or 4-57B, infra, or both, should also be given, if appropriate.
Committee Comments
Prior to its 2005 amendment, 21 O.S. § 713 required an unborn child to be "quick" before criminal liability for manslaughter in the first degree could be imposed. See 21 O.S. 2001, § 713 (amended 2005). "Although 'quick child' is not defined by statute, the term is generally defined as a fetus that has so developed as to move within the mother's womb." McCarty v. State, 2002 OK CR 4, n.2, 41 P. 3d 981. 




OUJI-CR 4-57A
LIMITATIONS ON (INJURIES TO)/(DEATH OF) UNBORN CHILD
No person shall be guilty of:
(murder in the first degree of)
(murder in the second degree of)
(manslaughter in the first degree of)
(manslaughter in the second degree of)
(shooting with intent to kill)
(use of a vehicle to facilitate the discharge of a firearm/crossbow/weapon in the conscious disregard for the safety of)
(assault and battery with a deadly weapon upon)
(willfully killing)
an unborn child if:
[The acts that caused the death of the unborn child were committed during a legal abortion to which the pregnant woman consented ; .]
OR
[The acts were committed pursuant to the usual and customary standards of medical practice during diagnostic testing or therapeutic treatment.]
______________________________
Statutory Authority: 21 O.S. Supp. 2006 2011, §§ 652(D), 691(C), 713(B).
Notes on Use
The court should give the paragraphs in brackets if the issues are asserted as affirmative defenses and there is evidence to support them offered at the trial.




OUJI-CR 4-57B
NO PROSECUTION OF MOTHER FOR CAUSING DEATH OF UNBORN CHILD
Under no circumstances shall the mother of the unborn child be convicted for causing the death of the unborn child unless the mother has committed a crime that caused the death of the unborn child.
______________________________
Statutory Authority: 21 O.S. Supp. 2006 2011, §§ 652(E), 691(D), 713(C). 




OUJI-CR 4-58
(This Instruction is Intentionally Blank)




OUJI-CR 4-58A
TRAFFICKING IN CHILDREN-- ELEMENTS 
No person may be convicted of trafficking in children unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:
First, [Name of Defendant] knowingly accepted/solicited/offered/paid/ transferred any compensation in money/property/(any thing of value);
Second, in connection with the (acquisition/transfer of the legal/physical custody)/adoption of a minor child.
________________________
Statutory Authority: 21 O.S. 2011, § 866(A)(1)(a); 10 O.S. Supp. 2017, § 7505-3.2.
Notes on Use
This Instruction covers the crime of trafficking in children as set forth in 21 O.S. 2011, § 866(A)(1)(a). 
The statute provides exceptions for certain costs and expenses, and OUJI-CR 4-58A-1 covers these costs and expenses as an affirmative defense to the crime. 
Committee Comments
Although the publisher of the Oklahoma Statutes added the heading for 21 O.S. 2011, § 866 "Elements of offense", the Oklahoma Session Laws do not include this heading, and it is not part of Oklahoma law. See Fairchild v. State, 1999 OK CR 49, ¶ 60, 998 P.2d 611, 624 (publisher's heading has no legal significance because it is not part of the statute); Hall v. State, 1957 OK CR 56, ¶ 5, 312 P.2d 981, 983-84 (titles or headings added by publisher after enactment for index purposes or identification are not in the law itself).




 
OUJI-CR 4-58A-1
TRAFFICKING IN CHILDREN-- AFFIRMATIVE DEFENSE FOR COURT APPROVED COSTS AND EXPENSES
[Name of Defendant] has asserted as a defense to the charge of trafficking in children that the following expenses have been approved by the Court and/or authorized by law: [Specify the applicable costs and expenses ordered by the Court or provided in 10 O.S. Supp. 2017, § 7505-3.2]. The State has the burden of proving beyond a reasonable doubt that the expenses were not approved by the Court and/or were not authorized by law.




OUJI-CR 4-64
MURDER IN THE FIRST DEGREE BY FELONY MURDER - ELEMENTS 
No person may be convicted of murder in the first degree unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:
First, the death of a human;
Second, the death occurred as a result of an act or event which happened in the defendant's commission/(attempted commission) of a/an 
[forcible rape] 
[robbery with a dangerous weapon] 
[kidnapping] 
[escape from lawful custody] 
[eluding an officer] 
[first-degree burglary/arson] 
[murder of a person other than the deceased] 
[shooting/discharge of a firearm/crossbow with intent to kill a person other than the deceased] 
[intentional discharge of a firearm/[specify other deadly weapon] into a dwelling/(building used for business/public purposes)] 
[unlawful distributing or dispensing of (controlled dangerous substances/(synthetic controlled substances)] 
[trafficking in illegal drugs]
[(manufacturing)/(attempting to manufacture) a controlled dangerous substance)]; 
Third, the elements of the crime of
[forcible rape] 
[robbery with a dangerous weapon] 
[kidnapping] 
[escape from lawful custody] 
[eluding an officer] 
[first-degree burglary/arson] 
[murder of a person other than the deceased] 
[shooting/discharge of a firearm/crossbow with intent to kill a person other than the deceased] 
[intentional discharge of a firearm/[specify other deadly weapon] into a dwelling/(building used for business/public purposes)] 
[unlawful distributing or dispensing of (controlled dangerous substances/(synthetic controlled substances)] 
[trafficking in illegal drugs]
[(manufacturing)/(attempting to manufacture) a controlled dangerous substance)]
that the defendant is alleged to have been in the commission of are as follows:
[Give Elements of Underlying Felony] 
Notes on Use
The trial judge should give accomplice and/or coconspirator instructions where appropriate. 
Committee Comments
As a result of a 1996 amendment, the The felony-murder statute, 21 O.S.2011, §701.7(B) covers not only deaths that were actually committed by the person charged with the underlying felony but also deaths that were committed by that person's intended victims, police officers and innocent bystanders. Kinchion v. State, 2003 OK CR 28, ¶ 6, 81 P.3d 681, 683. 
FOOTNOTES
1. It must be emphasized that the Oklahoma statutes do not include as a specific crime "An Escape from Lawful Custody." This instruction is appropriate only when the defendant has escaped from a peace officer after being lawfully arrested or detained by such officer, 21 O.S. 2001 2011, § 444, or where the escape is from a penal institution, 21 O.S. 2001 2011, § 443. (See OUJI-CR 6-52 through 6-54.) 




OUJI-CR 4-65
MURDER IN THE FIRST DEGREE BY FELONY MURDER - IN THE COMMISSION OF DEFINED
A person is in the commission of
[forcible rape] 
[robbery with a dangerous weapon] 
[kidnapping] 
[escape from lawful custody] 
[eluding an officer] 
[first-degree burglary/arson] 
[murder of a person other than the deceased] 
[shooting/discharge of a firearm/crossbow with intent to kill a person other than the deceased] 
[intentional discharge of a firearm/[specify other deadly weapon] into a dwelling/(building used for business/public purposes)] 
[unlawful distributing or dispensing of (controlled dangerous substances/(synthetic controlled substances)] 
[trafficking in illegal drugs]
[(manufacturing)/(attempting to manufacture) a controlled dangerous substance)]
when he/she is (performing an act which is an inseparable part of)/ (performing an act which is necessary in order to complete the course of conduct constituting)/(fleeing from the immediate scene of) a/an
[forcible rape] 
[robbery with a dangerous weapon] 
[kidnapping] 
[escape from lawful custody] 
[eluding an officer] 
[first-degree burglary/arson] 
[murder of a person other than the deceased] 
[shooting/discharge of a firearm/crossbow with intent to kill a person other than the deceased] 
[intentional discharge of a firearm/[specify other deadly weapon] into a dwelling/(building used for business/public purposes)] 
[unlawful distributing or dispensing of (controlled dangerous substances/(synthetic controlled substances)] 
[trafficking in illegal drugs]
[(manufacturing)/(attempting to manufacture) a controlled dangerous substance)].
______________________________
Statutory Authority: 21 O.S. Supp. 1999 2011, § 701.7(B).
Notes on Use
This instruction must be given in every prosecution for murder in the first degree by felony murder. 
If the predicate felony is an attempted crime, the trial judge should give the appropriate instructions for attempts (OUJI-CR 2-10 to 2-15). 
Committee Comments
The first-degree felony-murder statute explicitly negates the requirement of mental state, and is analogous in this respect to the pre-1973 felony-murder statute. An analysis of the elements of first-degree felony murder follows. 
The Death of a Human. An unborn fetus that is viable at the time of injury is a "human being" and therefore may be the subject of a homicide. Hughes v. State, 1994 OK CR 3, ¶ 4, 868 P.2d 730, 731. 
Since intent to effect death is not an element of the crime of felony murder, an accused may be found guilty of murder in the first degree where he/she engages in one of the specified felonies, and his/her personal conduct causes death. The instruction encompasses this straightforward situation. 
The felony-murder statute states that a person commits murder when that person or another person takes the life of a human during, or if the death of a human being results from, the commission of an underlying felony. The statute was amended in 1996 to cover deaths that occur at the hands of the intended victim of the underlying felony, police officers, or innocent bystanders. Dickens v. State, 2005 OK CR 4, ¶ 8, 106 P.3d 599, 601 ("That a police officer killed a codefendant does not relieve Appellant of responsibility for the death."); Kinchion v. State, 2003 OK CR 28, ¶ 6, 81 P.3d 681, 683.
The instruction also addresses the situation where a cofelon, rather than the accused, has performed the conduct causing the death in the commission of a felony. The most significant and troublesome question raised by the adoption of section 701.7 concerns the circumstances under which the defendant will be deemed responsible for felony murder when he/she has participated in the commission of the underlying felony but does not actually participate in the killing, as a factual matter, or as an aider or abettor. See, e.g., Oxendine v. State, 1960 OK CR 26, 350 P.2d 606 (defendant guilty of murder as a principal under 21 O.S. 1991, § 172, where defendant agreed with coparticipant, who fired fatal shot, to murder robbery victims in order to prevent detection and identification). 
The pre-1973 felony-murder statute, section 701(3), defined the offense as one "perpetrated without any design to effect death by a person engaged in the commission of any felony." A prodigious number of Oklahoma cases exist which interpret this language as allowing conviction for felony murder of all felons participating in a felony which results in death to the victim, regardless of which cofelon actually does the killing. As the court explained in Carle v. State, 1926 OK CR 137, 34 Okl. Cr. 24, 32, 244 P. 833, 836, 34 Okl. Cr 24, 32 (1926): 
It is well-settled that, where two or more persons enter into a conspiracy to commit a felony under such circumstances as will, when tested by human experience, probably result in the taking of human life, it is presumed that all understand the consequences, and, if death happens in the prosecution of such enterprise, all are alike guilty of a homicide. 
See also Lewis v. State
, 1967 OK CR 92, 451 P.2d 399; Osborn v. State, 1948 OK CR 24, 86 Okl. Cr. 259, 194 P.2d 176 ,86 Okl. Cr. 259 (1948); Morris v. State, 1939 OK CR 150, 68 Okl. Cr. 147, 96 P.2d 88 ,68 Okl. Cr. 147 (1939); Sands v. State, 1937 OK CR 66, 61 Okl. Cr. 206, 67 P.2d 62, 61 Okl. Cr. 206 (1937); Valdez v. State, 18 Okl. Cr. 204, 194 P. 451 (1921). 
In Johnson v. State, 1963 OK CR 91, 386 P.2d 336, criminal responsibility for murder was extended even further. In this case, the defendant's conviction for murder of a police officer was upheld, although it could not be proved that the fatal bullet came from the gun the defendant was firing, rather than from the gun being fired by another officer. The court determined that, where "an accused commits an assault designed to produce injury or death upon officers of the law, and injury or death does result without any intervening cause, but from an instinctive retaliatory force, the accused is criminally responsible." Id. at 340. The court cautioned, however, that its holding "should not be construed as extending beyond the facts of the instant case and an instruction ... should only be given where similar facts exist." Therefore, it remains unclear whether prior to the enactment of section 701.7 the felony-murder rule extended to deaths during the commission of a felony which were traceable to the conduct of police officers, innocent bystanders, or victims. 
Despite this precedent, attention must be focused upon the language alteration embodied in the first-degree murder definition of felony murder, which explicitly holds a person responsible for murder only "when he takes the life of a human being" (emphasis added). There appears to be no clearer way to express a legislative mandate that the defendant may be convicted for first-degree murder accomplished without statutory malice during the commission of a felony, with its concomitant potential punishment of death, only where the defendant himself has performed the homicidal act. This language should be contrasted to that embodied in section 701.8, which merely echoes the old section 701(3); this indicates a deliberate legislative change in the wording of section 701.7. 
The counterargument is that, regardless of the clear import of the present statute, the Legislature could not have intended a result which not only would overturn existing precedent, but also would allow the defendant participating in one of the felonies enumerated in section 701.7 who does not commit the fatal act wholly to escape punishment for murder. This result follows from the exclusion of the specified felonies of section 701.7 from the definition of felony murder in the second degree. See § 701.8. 
The Commission has concluded that the adoption of the language "when he takes the life of a human being" was intended as a clarification, rather than a refutation, of existing Oklahoma precedent. It is the viewpoint of the Commission that "he" in the above quoted statutory language must be construed to encompass any felon engaged in the commission of an enumerated felony crime. This construction preserves the concepts underlying the felony-murder rule articulated both at common law and throughout Oklahoma cases, that persons who agree to engage in conduct that is inherently dangerous or holds a great potential for peril to others, is responsible, regardless of malice, when death occurs at the hands of one of his/her cofelons. 
Even though a person may be convicted under the felony-murder rule for the acts of an accomplice, he may not be subject to the death penalty unless he was individually culpable for the killing. See Tison v. Arizona, 481 U.S. 137, 158 (1987) (requiring "major participation in the felony committed, combined with reckless indifference to human life" for defendant to be subject to the death penalty under the felony-murder rule); Enmund v. Florida, 458 U.S. 782, 797 (1982) (reversing death penalty where the defendant neither killed, attempted to kill, or intended the killing to take place or the use of lethal force). 
The use of the term "he" cannot be construed as including deaths at the hands of police officers, victims of the felony, or innocent bystanders without doing violence to the statutory language. State v. Jones, 1993 OK CR 36, ¶ 7, 859 P.2d 514, 515. Many jurisdictions extend the felony-murder rule to killings perpetrated by someone other than a cofelon during the commission or the aftermath of the felony, on the theory that felons voluntarily accept all consequences of their dangerous conduct by engaging in the felony. See generally W. LaFave & A. Scott, Criminal Law § 71, at 545-61 (1972). However, the clear legislative reference of "he" to the perpetrator of the homicidal act can only be construed as a limitation on the felony-murder rule. This restriction limits Johnson, supra, to its facts, and requires that the homicidal act be performed by one of the cofelons. 
The Death Occurred as a Result of an Act or Event Which Happened in the Commission of a Specified Felony. The statute defines murder in the first degree to include killings perpetrated during the course of a number of specified felonies, including forcible rape, robbery with a dangerous weapon, kidnapping, escape from lawful custody, first-degree arson, first-degree burglary, unlawful distribution of controlled dangerous substances, and trafficking in illegal drugs. 
The trial court must instruct the jury regarding the elements of the underlying felony with which the defendant is charged. 
The trial judge must also instruct the jurors regarding the breadth of the "in the commission of" language, so there is no confusion regarding whether a homicide has been committed "in" the course of committing a felony. Therefore, a separate instruction defining "in the commission of" is included. 
It must be noted that the guidance afforded by Oklahoma case law regarding the scope of criminal conduct included within the purview of "in the commission of" indicates a broad reading of this language. In Clark v. State, 1977 OK CR 4, 558 P.2d 674, in construing the predecessor first-degree felony-murder rule, the court declared: 

[I]f the homicide is committed during the one, continuous transaction, the acts are so closely connected as to be inseparable in terms of time, place, and causal relation, and the actions tend to be explanatory and incidental to each other, the homicide has been committed during the felony in our statutory sense. 
Id. ¶ 16, 558 P.2d at 678. The felony-murder rule was held applicable in that case to the killing of a hostage taken during a bank robbery by the defendants after they had left the bank and placed the deceased and another hostage in a different location. See also Johnson v. State, 1963 OK CR 91, 386 P.2d 336, (homicide committed during resistance by defendant after burglary attempt was thwarted by pursuing officers constitutes murder); Oxendine v. State, 1960 OK CR 26, 350 P.2d 606 (homicide committed to avoid detection and identification of perpetrators of felony constitutes murder). 
A defendant may be convicted of murder under the felony-murder rule even though the defendant does not complete the underlying felony crime. For example, the Oklahoma Court of Criminal Appeals affirmed a murder conviction in James v. State, 1981 OK CR 145, 637 P.2d 862, where the fatal injury occurred during the course of an attempted robbery with a dangerous weapon. The court stated: "[T]his Court has concluded that the Legislature intended to include attempted armed robbery in the felony murder statute, just as they intended to include attempted armed robbery in the statute defining armed robbery." Id. ¶ 13, 637 P.2d at 865. See also McDonald v. State, 1984 OK CR 2, ¶ 8, 674 P.2d 51, 53 (following James). 
Causation
. In a line of cases, the Court of Criminal Appeals has recognized a nexus requirement between the underlying felony and the victim's death in order for the felony murder doctrine to be applicable. Malaske v. State, 2004 OK CR 18, ¶ 5, 89 P.3d 1116, 1118; Wade v. State, 1978 OK CR 77, ¶ 4, 581 P.2d 914, 916; Lampkin v. State, 1991 OK CR 33, ¶4, 808 P.2d 694, 695; Diaz v. State, 1986 OK CR 187, ¶ 9, 728 P.2d 503, 509; Irvin v. State, 1980 OK CR 70, ¶ 34, 617 P.2d 588, 597. This requirement is satisfied if the defendant's conduct was a "substantial factor in bringing about the death and the conduct is dangerous and threatens or destroys life.'' See OUJI-CR 4-60, supra, As in all homicide cases, there must be a causal link between the conduct of the defendant, or of one of the cofelons, and the death, so the jury must be instructed regarding causation. The Commission chose the phrase "cause," and omitted use of the terms "legal" or "proximate," in order to obviate confusion. 
However, it is not necessary that causal connection between the felony itself and the death be established. The argument that the particular felony which the defendant was engaged in committing was not proximately related to the victim's death was explicitly rejected in Wade v. State, 1978 OK CR 77, 581 P.2d 914. The defendant in Wade argued that his felony, possession of a loaded firearm in an establishment selling beer and alcoholic beverages, in violation of 21 O.S. Supp. 1976, § 1272.2, was not the legal cause of the homicide by his shooting the victim. The court declared that the State is not constrained to establish that "the felony perpetrated by the defendant is the proximate cause of the victim's death in order to establish the crime of Murder." Id. ¶ 3, 581 P.2d at 916. Rather, the State was required to establish that the felony committed was one "inherently or potentially dangerous to human life," id. ¶ 4, 581 P.2d at 916, an issue which does not arise under section 701.7, but is further discussed in the Commission Comment accompanying second-degree felony murder section 701.8. 




OUJI-CR 4-87B
LIFE WITHOUT PAROLE PROCEEDINGS - JUVENILES
By your verdict in the first part of this trial you have already found the defendant guilty of the crime of murder in the first degree. You must now determine the proper punishment.
Under the law of the State of Oklahoma, every person found guilty of murder in the first degree shall be punished by imprisonment for life without the possibility of parole, or imprisonment for life with the possibility of parole.
You are further instructed that [Defendant] was a juvenile when this crime was committed. The law regards juvenile offenders generally as having lesser moral culpability and greater capacity for change than adult offenders. An offender's youth matters in determining the appropriateness of the sentence in this case.
You are therefore instructed to consider, in determining the proper sentence, whether the defendant's youth and youth-related characteristics, as well as any other aggravating and mitigating circumstances, and the nature of the crime, reflect the defendant's transient immaturity as a juvenile; or, on the other hand, irreparable corruption and permanent incorrigibility.
No person who committed a crime as a juvenile may be sentenced to life without the possibility of parole unless you find beyond a reasonable doubt that the defendant is irreparably corrupt and permanently incorrigible.
Notes on Use
In Luna v. State, 2016 OK CR 27, ¶ 21, 387 P.3d 956, 962, the Oklahoma Court of Criminal Appeals stated that a "meaningful procedure" was required for imposition of a sentence of life without parole for a juvenile offender. Bifurcation would be an appropriate procedure, and this instruction should be used in the sentencing stage of a trial for first degree murder if the defendant was under the age of eighteen at the time of the murder.
Committee Comments
The United States Supreme Court held in Miller v. Alabama, 567 U.S. 460 (2012), that a sentence of "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' Id. at 460. The Oklahoma Court of Criminal Appeals decided in Luna v. State, 2016 OK CR 27, ¶ 21, 387 P.3d 956, 963, that Miller required a jury to be "fully aware of the constitutional 'line between children whose crimes reflect transient immaturity and those rare children whose crimes reflect irreparable corruption.' " This Instruction is based on the instruction that the Luna court promulgated. Id. n. 11, 387 P.3d at 963. 




 
OUJI-CR 4-96A
MANSLAUGHTER
KILLING AN UNBORN CHILD - ELEMENTS 
No person may be convicted of killing an unborn child unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:
First, unlawfully; 
Second, willfully; 
Third, killing an unborn child; 
____________________________
Statutory Authority: 21 O.S. Supp. 2005, § 713.
Notes on Use
The court should also give OUJI-CR 4-57, infra, and, if appropriate, OUJI-CR 4-57A or 4-57B, or both. 
Committee Comments
Prior to its 2005 amendment, 21 O.S. § 713 required an unborn child to be "quick" before criminal liability for manslaughter in the first degree could be imposed. See 21 O.S. 2001, § 713 (amended 2005). "Although 'quick child' is not defined by statute, the term is generally defined as a fetus that has so developed as to move within the mother's womb." McCarty v. State, 2002 OK CR 4, n.2, 41 P. 3d 981. 




OUJI-CR 4-138
RAPE AND SEX CRIMES -- CONSENT OF MINOR 
You are instructed that as a matter of law a minor under the age of fourteen/sixteen is incapable of giving consent/agreement to engaging in sexual conduct which is otherwise prohibited by law and the agreement/consent of such minor to such activity should be disregarded by you in determining the question of the defendant's guilt.
It is the burden of the State to prove beyond a reasonable doubt the absence of consent to the (sexual intercourse)/[specify other sexual conduct]. 
Persons need not expressly announce their consent to engage in sexual activity for there to be consent. Consent can be given either through words or through actions that, when viewed in the light of all the surrounding circumstances, would demonstrate to a reasonable person that consent for the specific sexual activity had been given.
Consent is present when the evidence, in whatever form, is sufficient to demonstrate that a reasonable person would have believed that the alleged victim had affirmatively and freely given authorization to the act.
"Consent" means the affirmative, unambiguous and voluntary agreement to engage in a specific sexual activity during a sexual encounter. Consent can be revoked at any time.
Consent cannot be:
1. Given by an individual who:
a. is asleep or is mentally or physically incapacitated either through the effect of drugs or alcohol or for any other reason, or
b. is under duress, threat, coercion or force; or
2. Inferred under circumstances in which consent is not clear including, but not limited to:
a. the absence of an individual saying "no" or "stop", or
b. the existence of a prior or current relationship or sexual activity.
If there is evidence to suggest that the defendant reasonably believed that consent had been given, the State must demonstrate that such a belief was unreasonable under all of the circumstances. If you find that the State has failed to sustain its burden of proof beyond a reasonable doubt, then the defendant must be found not guilty. 
______________________________
Statutory Authority: 21 O.S. Supp. 2017, § 113.
Notes on Use
This instruction is appropriate for rape and other sex crimes when the victim is a child below a particular age. This age is fourteen for prosecutions for rape in the first degree and sixteen for prosecutions for rape in the second degree and other sex crimes. See 21 O.S. 1991 & Supp. 2000, §§ 1111-1114. This Instruction should be given where consent is an issue in the case, including where "force" is an element of a crime involving sexual assault. See 21 O.S. Supp. 2017, § 111(A) (defining "force") and § 112 (defining "sexual assault"). 
Committee Comments
The Oklahoma Court of Criminal Appeals held in Kimbro v. State, 1990 OK CR 4, ¶¶ 3-4, 857 P.2d 798, 799, that as a matter of law a child under the age of sixteen cannot consent to oral or anal sodomy. In doing so, it overruled Slaughterback v. State, 1979 OK CR 28, 594 P.2d 780. 




_OUJI-CR 4-138A
RAPE AND SEX CRIMES -- CONSENT OF MINOR
You are instructed that as a matter of law a minor under the age of fourteen/sixteen is incapable of giving consent/agreement to engaging in sexual conduct which is otherwise prohibited by law and the agreement/consent of such minor to such activity should be disregarded by you in determining the question of the defendant's guilt.
Notes on Use
This instruction is appropriate for rape and other sex crimes when the victim is a child below a particular age. This age is fourteen for prosecutions for rape in the first degree and sixteen for prosecutions for rape in the second degree and other sex crimes. See 21 O.S. 1991 & Supp. 2000 2011 & Supp. 2017, §§ 1111-1114. 
Committee Comments
The Oklahoma Court of Criminal Appeals held in Kimbro v. State, 1990 OK CR 4, ¶¶ 3-4, 857 P.2d 798, 799, that as a matter of law a child under the age of sixteen cannot consent to oral or anal sodomy. In doing so, it overruled Slaughterback v. State, 1979 OK CR 28, 594 P.2d 780. 




F. DEFENSE OF INSANITY MENTAL ILLNESS
OUJI-CR 8-31
DEFENSE OF INSANITY MENTAL ILLNESS - INTRODUCTION
Evidence has been introduced of insanity as a defense to the charge that the defendant has committed the crime of Defendant has raised the Defense of Mental Illness and asserts he/she should be found not guilty by reason of mental illness for [Crime Charged in Information/ Indictment]. Under the laws of the State Oklahoma law, no person can be convicted of a crime if that person was:
1) mentally ill insane at the time of the commission of the acts or omissions that constitute the crime., and
2) was either unable to understand the nature and consequences of his or her actions or was unable to differentiate right from wrong, and
3) has not been diagnosed with antisocial personality disorder which substantially contributed to the act for which the person has been charged .
Notes on Use
The introductory instruction is simply meant to inform the jury that the defendant is claiming the defense of insanity mental illness and that the laws of the State do not permit conviction of a defendant who was insane mentally ill at the time of the commission of the acts with which he is charged, was either unable to understand the nature and consequences of his/her actions or was unable to differentiate right from wrong, and has not been diagnosed with antisocial personality disorder which substantially contributed to the act for which the person has been charged. 21 O.S. 1991, § 152(4); 22 O.S. 1991 Supp. 2017, § 1161. The defense of mental illness replaces what was formerly known as the defense of insanity.




OUJI-CR 8-31A
DEFENSE OF MENTAL ILLNESS - GUILTY WITH MENTAL DEFECT 
I am also required by law to instruct you concerning the verdict of guilty with a mental defect. A person is guilty with mental defect if that person committed the act for which the person was charged and was either unable to understand the nature and consequences of his/her actions or was unable to differentiate right from wrong, and has been diagnosed with antisocial personality disorder which substantially contributed to the act for which the person has been charged. At the end of these instructions you will be asked to determine whether the Defendant is guilty, guilty with a mental defect, not guilty, or not guilty by reason of mental illness.
______________________________
Statutory Authority: 22 O.S.Supp.2017, § 1161(H)(4).




OUJI-CR 8-32
DEFENSE OF INSANITY MENTAL ILLNESS - REQUIREMENTS DEFINITIONS
A person is insane when that person is suffering from such a disability of reason or disease of the mind that he/she does not know that his/her acts or omissions are wrong and is unable to distinguish right from wrong with respect to his/her acts or omissions. A person is also insane when that person is suffering from such a disability of reason or disease of the mind that he/she does not understand the nature and consequences of his/her acts or omissions.
Mental Illness: A person is mentally ill if that person has a substantial disorder of thought, mood, perception, psychological orientation or memory that significantly impaired judgment, behavior, capacity to recognize reality or ability to meet the ordinary demands of life. 
Mental Defect: A person has a mental defect if that person has been diagnosed with antisocial personality disorder which substantially contributed to the act for which the person has been charged.
Antisocial Personality Disorder: An antisocial personality disorder is a pervasive pattern of disregard for and violation of the rights of others, occurring since the age of fifteen (15). It is indicated by three or more of the following:
1. Failure to conform to social norms with respect to lawful behaviors, as 
indicated by repeatedly performing acts that are grounds for arrest.
2. Deceitfulness, as indicated by repeated lying, use of aliases, or conning others for personal profit or pleasure.
3. Impulsivity or failure to plan ahead.
4. Irritability and aggressiveness, as indicated by repeated physical fights or assaults.
5. Reckless disregard for safety of self or others.
6. Consistent irresponsibility, as indicated by repeated failure to sustain consistent work behavior or honor financial obligations.
7. Lack of remorse, as indicated by being indifferent to or rationalizing having hurt, mistreated, or stolen from another.
In addition, 1) the individual is at least eighteen (18) years of age, 2) there is evidence of conduct disorder with onset before fifteen (15) years of age, and 3) the occurrence of antisocial behavior is not exclusively during the course of schizophrenia or bipolar disorder.
______________________________
Statutory Authority: 21 O.S. 1991, § 152(4); 22 O.S. 1991 Supp. 2017, §§ 914, 1161 (H). 
Committee Comments Notes on Use
This Instruction should be modified if the definition is modified by a subsequent edition of the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5).
OUJI-CR 8-32, the instruction on requirements of insanity, defines insanity for the jury. The definition of insanity stated in this instruction is the M'Naghten Test for insanity, which has long been the test for insanity in Oklahoma. Pugh v. State, 1989 OK CR 70, ¶ 5, 781 P.2d 843, 844; Richardson v. State, 1977 OK CR 298, ¶ 8, 569 P.2d 1018; French v. State, 1966 OK CR 84, ¶ 14, 416 P.2d 171; Dare v. State, 1963 OK CR 6, ¶ 34, 378 P.2d 339. The M'Naghten Test is the judicial formulation of the statutory definition of insanity found at 21 O.S. 2011, § 152(4). Under this definition, a person is insane if he or she is either unable to differentiate right from wrong or understand the nature and consequences of his or her acts. Johnson v. State, 1992 OK CR 71, ¶ 8, 841 P.2d 595, 596 (ordering new trial because jury instruction used conjunctive word "and" rather than disjunctive word "or"). 
The instructions on insanity do not include any comment or statement on other possible tests of insanity for several reasons. First, the law is clearly settled in Oklahoma that the M'Naghten Test is the correct test for insanity. Any reference to other possible tests of insanity would either incorrectly state the law or possibly confuse the jury.
Second, the product test of Durham v. United States, 214 F.2d 862 (D.C. Cir. 1954), has been specifically rejected by the Court of Criminal Appeals in Dare v. State, supra. Moreover, the irresistible impulse test has long been rejected by the Court of Criminal Appeals. Snodgrass v. State, 1918 OK CR 139, 175 P. 129, 15 Okl. Cr. 117. See also 21 O.S. 2011, § 154. 
Insanity may be induced by long periods of excessive alcohol or drug consumption, which may cause a continuing mental disease that deprives a person of the capacity to distinguish right from wrong. Voluntary intoxication that results in temporary mania does not constitute a mental defect that is necessary for a valid defense of insanity, however. Jones v. State, 1982 OK CR 112, ¶ 8, 648 P.2d 1251, 1254. 
It should be noted that the defense "that the person committed the act charged without being conscious thereof," i.e., automatism, is set out in 21 O.S. 2011, § 152(6). See Sellers v. State, 1991 OK CR 41, ¶ 32, 809 P.2d 676, 687. In Jones v. State, 1982 OK CR 112, 648 P.2d 1251, the Oklahoma Court of Criminal Appeals described this defense as follows: 

The defense of unconsciousness applies to situations where the defendant's otherwise criminal conduct results from an involuntary act totally beyond the control and knowledge of the defendant. The defense is not the same as insanity. [Citation omitted.]. To invoke an unconsciousness defense the defendant is not required to present evidence of a mental disease or defect. 
1982 OK CR 112, ¶ 31, 648 P.2d at 1258. 
OUJI-CR 8-33, the instruction on burden of proof, contains the substance of the jury instructions on the burden of proof for the defense of insanity that the Oklahoma Court of Criminal Appeals approved in Thomas v. State, 1990 OK CR 36, ¶ 4, 792 P.2d 1195, 1196, and Morris v. State, 1988 OK CR 298, ¶ 7, 766 P.2d 1388, 1390. Since insanity is a defense, the defendant has the burden to come forward with evidence of insanity, unless the evidence of the State raises the issue. Wooldridge v. State, 1990 OK CR 77, ¶16, 801 P.2d 729, 733. If the defendant does not come forward with evidence of insanity, insanity as an issue simply never enters the trial and never enters the consideration of the jury. If the defendant brings forward evidence of insanity, the question of whether sufficient evidence has been presented to require the trial judge to instruct the jury on the defense of insanity is a mixed question of law for the trial judge and a question of fact for the jury. Brewer v. State, 1986 OK CR 55, ¶ 17, 718 P.2d 354, 361. Accord Ake v. State, 1989 OK CR 30, ¶ 43, 778 P.2d 460, 470 (reaffirming Brewer). Once the jury determines that the defendant has presented sufficient evidence to raise the defense of insanity, the State's burden of overcoming that defense is a burden of proof beyond a reasonable doubt. Taylor v. State, 1994 OK CR 61, ¶ 10, 881 P.2d 755, 758; Adair v. State, 1911 OK CR 296, 118 P. 416, 6 Okl. Cr. 284. 
The Commission has decided not to draft instructions concerning temporary versus permanent insanity. Such instructions would only confuse the jury, in the opinion of the Commission, because the issue the jury should focus upon is whether the defendant was sane at the time of the commission of the acts with which he is charged. The jury should not be confused with distinctions concerning the diagnosis or prognosis of the defendant's mental disease, which are irrelevant to the question which the jury must resolve. Of course, evidence on the defendant's mental health before and after the commission of the acts with which the defendant is charged is relevant to the jury's determination. But evidence on the defendant's mental health should be treated as all other evidence, and an evidentiary instruction informing the jury that it is to determine the weight to be given the evidence should be sufficient. See Adams v. State, 1930 OK CR 419, 292 P. 385, 49 Okl. Cr. 94.
Nor did the Commission draft instructions on lay versus expert testimony solely for the defense of insanity. The Commission was of the opinion that the usual evidentiary instructions on how the jury should handle lay testimony and expert testimony are sufficient, and that no special evidentiary instructions for the defense of insanity are needed.




OUJI-CR 8-33
DEFENSE OF MENTAL ILLNESS - REQUIREMENTS
The existence of mental illness standing alone is not sufficient to establish the Defense of Mental Illness. Instead, a person is not guilty by reason of mental illness when that person committed the act for which the person has been charged while mentally ill and was either unable to understand the nature and consequences of his/her actions or was unable to differentiate right from wrong, and has not been diagnosed with antisocial personality disorder which substantially contributed to the act for which the person has been charged. 
______________________________
Statutory Authority: 21 O.S. 2011, § 152(4); 22 O.S.2011 & Supp.2017, §§ 914, 1161.
Notes on Use
The major difference between not guilty by reason of mental illness and guilty with a mental defect is whether the defendant has been diagnosed with antisocial personality disorder that substantially contributed to the act for which the defendant has been charged. The governing statute, 22 O.S. Supp. 2017, § 1161, defines antisocial personality disorder by reference to the definition in the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition (DSM-5), or its subsequent editions. This condition is commonly called sociopathy, and it is characterized by a pervasive pattern of disregard for, or violation of, the rights of others and an impoverished moral sense or conscience. 




OUJI-CR 8-33A
DEFENSE OF MENTAL ILLNESS -- CONSIDERATION
In considering the Defense of Mental Illness, you shall first determine whether, at the time of the commission of the acts or omissions that constitute the crime, the defendant was either unable to understand the nature and consequences of his/her actions or was unable to differentiate right from wrong. If you find that the defendant was able to understand the nature and consequences of his/her actions and was able to differentiate right from wrong, then the Defense of Mental Illness does not apply.
If you find either that the defendant was unable to understand the nature and consequences of his or her actions or was unable to differentiate right from wrong, then you must determine whether the defendant has been diagnosed with antisocial personality disorder which substantially contributed to the act for which the person has been charged. If you find that the defendant has been so diagnosed and that his/her antisocial personality disorder substantially contributed to his/her criminal act, you shall find the defendant guilty with mental defect if the State has proved all elements of the charged offense beyond a reasonable doubt.
If you find that the defendant has not been diagnosed with antisocial personality disorder or that the disorder did not substantially contribute to his/her criminal act, you must determine whether the defendant is mentally ill. If you find that at the time of the commission of the acts or omissions that constitute the crime the defendant was mentally ill, and that the defendant was either unable to understand the nature and consequences of his/her actions or was unable to differentiate right from wrong, then the defendant is not guilty by reason of mental illness. If you find that the defendant was not mentally ill, then the Defense of Mental Illness does not apply.




OUJI-CR 8-33B
DEFENSE OF INSANITY MENTAL ILLNESS - BURDEN OF PROOF
Every person is presumed to be saneof sound mind, and unless there is proof of insanity, the State may rely on the presumption of sanity and not offer any proof that the defendant was sane evidence is produced that the defendant is not guilty by reason of mental illness, the defense of mental illness does not apply. Therefore, unless you determine that sufficient evidence has been presented to raise a reasonable doubt as to the defendant's sanity at the time of the commission of the acts or omissions that constitute the crime, you are to presume that he/she was sane that the defendant is not guilty by reason of mental illness, the State may rely on this presumption and not offer any proof that the defense of mental illness does not apply. However, if sufficient evidence has been presented to raise a reasonable doubt as to his/her sanity that the defendant is not guilty by reason of mental illness, the State has the burden to prove beyond a reasonable doubt that the defendant was sane at the time of the commission of the acts or omissions that constitute the crime not acting under circumstances sufficient to constitute the defense of mental illness. If you find that the State has failed to sustain that burden, then the defendant must be found not guilty by reason of insanity mental illness.
______________________________
Statutory Authority: 21 O.S. 2011, § 152(4); 22 O.S. Supp. 2017, §§ 914, 1161.
Notes on Use
The explicit language of 22 O.S. Supp.2017, § 1161(A)(4) requires the defendant to raise the Defense of Mental Illness. Every person is presumed to be of sound minds and capable of committing crimes, thus, it is the defendant's burden to produce evidence establishing the defense of not guilty by reason of mental illness. See 21 O.S. 2011, § 152(4). 




OUJI-CR 8-33A C
DEFENSE OF INSANITY MENTAL ILLNESS - EXPLANATION OF CONSEQUENCES OF VERDICT OF NOT GUILTY BY REASON OF INSANITY MENTAL ILLNESS AND GUILTY WITH MENTAL DEFECT
If you decide that the defendant was insane is not guilty by reason of mental illness at the time of the commission of the crime charged, the defendant shall not be released from confinement in a mental hospital until the court determines that the defendant is not at that time dangerous to the public peace and safety by being a risk of harm to himself/herself or others on account of a mental illness.
If you decide that the defendant is guilty with mental defect, you shall then determine the proper punishment as prescribed in these Instructions. A defendant found to be guilty with mental defect shall not be placed in the community without undergoing a mental examination and adoption of a treatment plan.
______________________________
Statutory Authority: 22 O.S. Supp. 2017 2007, § 1161(A)(2), (A)(5).
Notes on Use
This Instruction should be given when a defense of insanity not guilty by reason of mental illness has been raised. The Court of Criminal Appeals held in Ullery v. State, 1999 OK CR 36, ¶ 28, 988 P.2d 332, 346, that a jury instruction on the consequences of a verdict of not guilty by reason of insanity was not required. However, in an unpublished decision, Fears v. State, No. F-2004-1279 (July 7, 2006), the Court of Criminal Appeals has suggested that trial courts should use an instruction explaining the consequences of a verdict of not guilty by reason of insanity. There is a risk that jurors might confuse a verdict of not guilty by reason of insanity mental illness with other not guilty verdicts and think that the defendant would go free if they returned a verdict of not guilty by reason of insanity mental illness. See Lyles v. United States, 254 F.2d 725, 728 (D.C. Cir. 1957), overruled in part in Brawner v. United States, 471 F.2d 969 (D.C. Cir. 1972). This Instruction ought to avoid both juror confusion and also unnecessary speculation by jurors during their deliberations. 




OUJI-CR 8-34
DEFENSE OF INSANITY MENTAL ILLNESS - FORM OF VERDICT
IN THE DISTRICT COURT OF THE ____ JUDICIAL DISTRICT OF
THE STATE OF OKLAHOMA SITTING IN AND FOR ______ COUNTY
THE STATE OF OKLAHOMA,




Plaintiff,

)

 

)


vs

) Case No. ______

 

)


JOHN DOE,

)

 

)


Defendant.

)
VERDICT
COUNT 1 -- [CRIME CHARGED]
We, the jury, empaneled and sworn in the above-entitled cause, do, upon our oaths, find as follows:
Defendant is:
______ Guilty and fix punishment at ___________________.
______ Guilty with mental defect and fix punishment at ______________.
______ Not guilty.
______ Not guilty by reason of insanity mental illness.
 








________________________
FOREPERSON
______________________________
Statutory Authority: 21 O.S. 2011, § 152(4); 22 O.S. 2011 & Supp. 2017, §§ 914, 1161.




OUJI-CR 10-13
RETURN OF VERDICT -- BASIC INSTRUCTION
If you find beyond a reasonable doubt that the defendant committed the crime of [Crime Charged], you shall return a verdict of guilty by marking the Verdict Form [for the crime of (Crime Charged)] appropriately.
If you have a reasonable doubt of the defendant's guilt of the charge of [Crime Charged], or you find that the State has failed to prove each element of [Crime Charged] beyond a reasonable doubt, you shall return a verdict of not guilty by marking the Verdict Form [for the crime of (Crime Charged)] appropriately.
If you find the defendant guilty, you shall then determine the proper punishment. The crime of [Crime Charged] is punishable by [State Range of Punishment (including any mandatory fine)]. [You may also impose a fine of not exceeding one/ten thousand dollars ($1,000/10,000).] When you have decided on the proper punishment, you shall fill in the appropriate space on the Verdict Form [for the crime of (Crime Charged)] and return the verdict to the Court.
Notes on Use
This instruction should be used in cases where there are no lesser included offenses charged, and there is no sentence enhancement for prior convictions. For instructions in cases involving lesser included offenses, see OUJI-CR 10-23 through 10-27. For instructions in cases involving sentence enhancement for prior convictions, see OUJI-CR 10-15 through 10-22. OUJI-CR 10-13A or 10-13B should be used for crimes listed in 21 O.S. Supp. 2015 2017, § 13.1, and OUJI-CR 10-13C should be used for crimes requiring post-imprisonment community supervision.
For any offense for which no fine is otherwise provided by law, the punishment may include a fine imposed under 21 O.S. 2011, § 64. Daniels v. State, 2016 OK CR 2, ¶ 5, 369 P.3d 381, 384; Fite v. State, 1993 OK CR 58, ¶¶ 8-11, 873 P.2d 293, 295. The Oklahoma Court of Criminal Appeals has provided an example of a proper instruction in Daniels v. State, as follows: "The crime of SHOOTING WITH INTENT TO KILL is punishable by imprisonment in the state penitentiary not exceeding life. In addition, you may also impose a fine not exceeding ten thousand ($10,000.00) dollars." 2016 OK CR 2, ¶ 5, 369 P.3d 381, 384.
If there are multiple counts, this instruction should be repeated for each count, and the instruction should conclude with the statement: "You may find the defendant guilty of [one or both] [some or all] counts or not guilty of [one or both] [some or all] counts." 
The Committee recommends individual Verdict Forms on separate sheets of paper for each Count. A Verdict Form to go with this instruction is provided in OUJI-CR 10-14, infra. 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA